Fermin FONSECA Flores, Plaintiff, Appellant,

v.

Robert R. PRANN, Defendant, Appellee;

Jaime FARDONK Vazquez, Plaintiff, Appellant,

v.

PORTO RICO LIGHTERAGE CO., Defendant, Appellee;

Roberto GALINDO Ramos, Plaintiff, Appellant,

v.

SAN JUAN DREDGING CORPORATION, Defendant, Appellee.

Nos. 5605, 5606, 5612.

United States Court of Appeals
First Circuit.

Sept. 15, 1960.

Harvey B. Nachman, San Juan, P. R., with whom Stanley L. Feldstein and Golenbock & Nachman, San Juan, P. R., were on brief, for appellants.

Walter L. Newsom, Jr., San Juan, P. R., with whom Enrique Cordova Diaz and Brown, Newsom & Cordova, San Juan, P. R., were on brief, for Robert R. Prann, appellee.

Antonio M. Bird, San Juan, P. R., with whom Hartzell, Fernandez & Novas, San Juan, P. R., was on brief, for The Porto Rico Lighterage Co., appellee.

Sarah Torres Peralta, San Juan, P. R., with whom Luis E. Garcia Benitez, San Juan, P. R., was on brief, for San Juan Dredging Corporation, appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

These appeals present a common question. They were heard together and can be decided by one opinion.

The appellants were seamen and members of the crews of vessels [1] who were injured while at work on their respective vessels when afloat on navigable waters within the territorial limits of Puerto Rico. Their employers had insured their employees in accordance with, and hence were covered by, the Puerto Rico Workmen's Accident Compensation Act, Act No. 45, Laws of 1935, as amended, 11 L.P.R.A. 1 et seq., and each appellant applied for and was awarded compensation under that Act. Following this each appellant brought suit in the court below against his employer to recover under the Jones Act for negligence and under the general maritime law for unseaworthiness. These appeals are from summary judgments dismissing each complaint on the ground that the plaintiffs' only remedy was that afforded by the local workmen's compensation act.[2]

In Southern Pacific Co. v. Jensen, 1917, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, the Court ruled that the Constitution of the United States conferred exclusive power upon the federal government with respect to matters within the admiralty and maritime jurisdiction. Saying at page 215 of 244 U.S., at page 528 of 37 S.Ct. that it must now be accepted as settled doctrine that " * * * Congress has paramount power to fix and determine the maritime law which shall prevail throughout the country," the Court held that no State might validly apply its workmen's compensation law to maritime injuries occurring on its territorial waters. Congress then amended the "saving to suitors" clause to provide not only that suitors in all cases should have the right to a common-law remedy when the common law was competent to give it, but also to give " * * * to claimants the rights and remedies under the workmen's compensation law of any state." But the amendment was struck down as unconstitutional in Knickerbocker Ice Co. v. Stewart, 1920, 253 U.S. 149, 164, 40 S.Ct. 438, 441, 64 L.Ed. 834, on the ground that the constitutional power of Congress to legislate concerning rights and liabilities within the maritime jurisdiction, and remedies for their enforcement, could not be delegated to the States, for the reason that "Congress cannot transfer its legislative power to the states—by nature this is non-delegable." Later Congress made a similar but more limited attempt but it met the same fate in State of Washington v. W. C. Dawson & Co., 1924, 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646.

These decisions impose constitutional restrictions on the power of the States and on the power of Congress to delegate its legislative powers to the States. But, whatever the actual status of the Commonwealth of Puerto Rico may be in all its details, its present status is certainly not that of a State of the United States. Nor is it even that of a territory incorporated into the union preparatory to statehood. Guerrido v. Alcoa Steamship Co., Inc., 1 Cir., 1956, 234 F. 2d 349, 352. As such the Government of Puerto Rico has such powers as Congress from time to time has seen fit to give it. And the broad power of Congress under Article IV, § 3, ¶ 2 to legislate for national territory is limited under the doctrine of the Insular Cases, so-called,[3]

---

**1.** At least, like the court below, we consider them to have been seamen and members of the crews of vessels although two of them worked on stationary dredges one of which was engaged in a highway construction project. See Senko v. La Crosse Dredging Corp., 1957, 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404; Grimes v. Raymond Concrete Pile Co., 1958, 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed. 2d 737.

**2.** Section 21 of that act in material part provides:

"When an employer insures his workmen or employees in accordance with this chapter, the right herein established to obtain compensation shall be the only remedy against the employer; * * *."

**3.** De Lima v. Bidwell, 1901, 182 U.S. 1, 21 S.Ct. 743, 45 L.Ed. 1041, and Downes v. Bidwell, 1901, 182 U.S. 244, 21 S.Ct. 770, 45 L.Ed. 1088, and subsequent cases confirming and applying their doctrine, see cases cited in People of Puerto Rico v. Tapia, 1918, 245 U.S. 639, 38 S.Ct. 192, 62 L.Ed. 525.

only by fundamental constitutional principles.

■ This court in Lastra v. New York & Porto Rico S. S. So., 1 Cir., 1924, 2 F.2d 812, 813, and in Guerrido v. Alcoa S. S. Co., supra, was not aware of any basic principle of the Constitution which prevented Congress from giving Puerto Rico jurisdiction over its own waters. Nor are we. Our problem, therefore, is not one of constitutional limitations. It is one of statutory interpretation. It is whether Congress in the exercise of its constitutional power under Article IV, § 3, ¶ 2, to legislate for national territory has in fact seen fit to confer on the Government of Puerto Rico power to make its workmen's compensation law applicable to injuries sustained by employees while at work on its territorial waters.

This court in the Lastra case cited above definitely answered this questioned in the affirmative. The basis for the court's decision was that in 1917 by §§ 7, 8 and 37 of the Second Puerto Rico Organic Act, called the Jones Act, 39 Stat. 951, 954, 964, Congress conferred full power of control over local navigable waters upon the Government of Puerto Rico to the complete exclusion of the admiralty and maritime law of the United States. Later on in the Guerrido case we reaffirmed the result reached in Lastra but not on the broad basis on which this court rested its result in that case, saying in 234 F.2d at page 352 that we had " * * * reached the conclusion that the broad proposition that the admiralty and maritime law of the United States is not in force to any extent in the navigable waters of Puerto Rico which we laid down in the Lastra case cannot be sustained." We rested this conclusion on a careful and thorough analysis of the applicable legislation, opinions and historical documents which need not be repeated here. It will suffice to say that as a result of our analysis we came to the conclusion " * * * that almost from the day of the Spanish cession of Puerto Rico to the United States it was recognized that the navigable waters of the island were to be regarded as navigable waters of the United States subject to the federal jurisdiction." We recognized that the statutes and opinions to which we referred to support this conclusion dealt primarily with the exercise of admiralty and maritime powers by the federal government in Puerto Rican waters. But at page 354 we said: " * * * we find nothing in them to suggest that the rules of the maritime law of the United States were not equally applicable in those waters to determine the rights and liabilities of private persons."

Nevertheless, in Guerrido we adhered to the conclusion reached in Lastra on the ground that §§ 7, 8 and 37 of the Second Organic Act of 1917, which were continued in force and form a part of the Puerto Rican Federal Relations Act,[4] gave the Legislature of Puerto Rico general legislative power over local waters. Therefore in the Guerrido case we came to the conclusion " * * * that the rules of the admiralty and maritime law of the United States are presently in force in the navigable waters of the United States in and around the island of Puerto Rico to the extent that they are not locally inapplicable either because they were not designed to apply to Puerto Rican waters or because they have been rendered inapplicable to these waters by inconsistent Puerto Rican legislation." But we were very careful immediately to point out at page 355 that this was of course not to say " * * * that Puerto Rican legislation could thus supplant a rule of maritime law which Congress in the exercise of its constitutional power has expressly made applicable to Puerto Rican waters."

■ It is certainly true that neither the Jones Act nor the general maritime law of unseaworthiness are inherently inapplicable in Puerto Rico. But on the other hand, there is nothing in the Jones Act specifically making its provisions applicable in the territorial waters of Puerto Rico and we are not aware that Congress has ever taken action to make

---

4. Law 600, 64 Stat. 319; 48 U.S.C.A. § 731 et seq.

the general maritime law of unseaworthiness apply in those waters. Instead in Lastra and Guerrido this court held and we agree that Congress in the valid exercise of powers conferred upon it by the Constitution gave the Legislature of Puerto Rico power to enact legislation inconsistent with the Jones Act and the general maritime law, and that the Legislature of Puerto Rico had exercised its power in its Workmen's Accident Compensation Act. Of course if Congress sees fit it may supplant the local legislation as it applies to local navigable waters by making the Jones Act and the general maritime law of unseaworthiness specifically applicable in Puerto Rican waters, but it is not our function to do so.

 We recognize that this holding creates an area of lack of uniformity in the maritime law. But it is clearly recognized in the Jensen case, supra, that absolute uniformity in things maritime is not a constitutional requirement nor is it even essential to the proper harmony of the maritime law in its interstate and international relations. For instances of lack of uniformity in the law of admiralty as applied in this country see the dissenting opinion of Mr. Justice Holmes in the Jensen case and the dissenting opinion of Mr. Justice Brandeis in the Knickerbocker Ice Co. case. If uniformity is desirable, it can be readily achieved by Congress. Until it specifically does so, we infer as this court did in the Lastra and Guerrido cases that in the sections of the Second Organic Act referred to above Congress intended to clothe the Government of Puerto Rico with power to provide for the application of its workmen's compensation act to injuries suffered by employees on local navigable waters. And this inference is supported by the practically contemporaneous amendments of the "saving to suitors" clause held unconstitutional in the Knickerbocker Ice Co. and Washington cases, supra, for those amendments indicate that it was then the mood of Congress to permit application of local law to injuries suffered by employees on local navigable waters. If the mood of Congress has changed, means for expressing the change are readily at hand.

Judgments will be entered affirming the judgments of the District Court.