**WATERMAN STEAMSHIP CORPORA-TION, Defendant, Appellant,**

v.

**Ramon RODRIGUEZ Colon, Plaintiff, Appellee.**

**Ramon RODRIGUEZ Colon, Plaintiff, Appellant,**

v.

**WATERMAN STEAMSHIP CORPORA-TION, Defendant, Appellee.**

**Nos. 5666, 5667.**

United States Court of Appeals First Circuit.

May 3, 1961.

Vicente M. Ydrach, San Juan, P. R., with whom Hartzell, Fernandez & Novas, San Juan, P. R., was on brief, for Waterman Steamship Corp.

Harvey B. Nachman, New York, N. Y., with whom Jerome Golenbock and Stanley L. Feldstein, New York, N. Y., were on brief, for Ramon Rodriguez Colon.

Before WOODBURY, Chief Judge, and MARIS * and HARTIGAN, Circuit Judges.

MARIS, Circuit Judge.

These are cross-appeals from a judgment entered in favor of the plaintiff, Ramon Rodriguez Colon, and against the defendant, Waterman Steamship Corporation, in the United States District Court for the District of Puerto Rico in a civil action brought to recover damages for personal injuries sustained by the plaintiff, a longshoreman in the employ of a stevedoring company which was engaged in unloading cargo from defendant's vessel while lying in the port of San Juan. Alleging that his injuries resulted from the negligence of defendant's officers and crew and from the unseaworthiness of the vessel, the plaintiff brought this action against the defendant. It was tried to the court without a jury. The district court found that the plaintiff's injuries were caused by the defendant's negligence and by its failure to provide a seaworthy vessel on which to work. Damages in the amount of $22,-898.65 were awarded the plaintiff, made up of $4,805.84 for loss of earnings up to trial, $15,592.81 for loss of future earnings, and $2,500.00 for pain and suffering, past and future. Both parties appealed. We consider first the defendant's appeal.

The defendant contends that the suit was prematurely brought and that the district court erred in refusing to dismiss it upon that ground. This contention is made in the light of two facts appearing in the record. One is that the plaintiff prosecuted a claim for workmen's compensation benefits out of the State Insurance Fund under the Puerto Rico Workmen's Accident Compensation Act, 11 L. P.R.A. § 1 et seq., which claim was decided by the Manager of the Fund on July 1, 1957 and on appeal on August 20, 1957. And the other is that the present suit was instituted on June 7, 1957, prior to both the Manager's initial decision and the final decision on appeal of the plaintiff's compensation claim. The contention is that section 31 of the Workmen's Accident Compensation Act, as amended,[1]

---

* Sitting by designation.

1. "Section 31.—In cases where the injury, the occupational disease, or the death, entitling the workman or employee, or his beneficiaries, to compensation in accordance with this Act, has been caused under circumstances making third parties liable for such injury, disease or death, the injured workman or employee or his beneficiaries may claim and recover damages from the third party liable for said injury, disease, or death,

within one year following the date when becomes final the decision of the case by the Manager of the State Insurance Fund, who may subrogate himself in the rights of the workman or employee or his beneficiaries to institute the same action in the following manner:

"When an injured workman or employee, or his beneficiaries in case of death, may be entitled to institute an action for damages against a third person

barred the bringing of the present suit prior to the end of the period of 90 days after the decision of the plaintiff's compensation claim became final.

Upon examining section 31 we observe preliminarily that the statute did not, as the defendant also argues, create the cause of action which the plaintiff seeks by the present suit to enforce.[2] On the contrary, while the Workmen's Accident Compensation Act deals primarily with the rights of an injured employee against his employer and the State Insurance Fund, section 31 recognizes that such an employee may also have a cause of action based on other existing law to recover damages from a third party for his injuries. The principal purpose of section 31 is to give the Manager of the State Insurance Fund out of which such an employee has been compensated the right to be subrogated for the benefit of the

in cases where the State Insurance Fund, in accordance with the terms of this Act, is obliged to compensate in any manner or to furnish treatment, the Manager of the State Insurance Fund shall subrogate himself in the rights of the workman or employee or of his beneficiaries, and may institute proceedings against such third person in the name of the injured workman or employee, or his beneficiaries, within the ninety (90) days following the date on which the decision of the case becomes final and executory, and any sum which as a result of the action, or by virtue of a judicial or extrajudicial compromise, may be obtained in excess of the expenses incurred in the case, shall be delivered to the injured workman or employee or to his beneficiaries entitled thereto. The workman or employee or his beneficiaries shall be parties in every proceeding instituted by the Manager under the provisions of this section, and it shall be the duty of the Manager to serve written notice on them of such proceedings within five (5) days after the action is instituted.

"If the Manager should fail to institute action against the third party liable, as set forth in the preceding paragraph, the workman or employee, or his beneficiaries, shall be fully at liberty to institute such action in their behalf, without being obliged to reimburse the State Insurance Fund for the expenses incurred in the case.

"Neither the injured workman or employee, nor his beneficiaries, may institute any action or compromise any cause of action they may have against the third party liable for the damages, until after the lapse of ninety days from the date on which the decision of the case by the Manager of the State Insurance Fund became final and executory.

"No compromise between the injured workman or employee, or his beneficiaries in case of death, and the third party liable, made within the ninety (90) days following the date on which the decision of the case becomes final and executory, or after the lapse of said term if the Manager has filed his complaint, shall be valid or effective in law unless the expenses incurred by the State Insurance Fund in the case are first paid; and no judgment shall be entered in suits of this nature, nor shall any compromise whatsoever as to the rights of the parties to said suits shall be approved, without making express reserve of the right of the State Insurance Fund to reimbursement of all expenses incurred; Provided, That the secretary of the court part taking cognizance of any claim of the nature described above shall notify the Manager of the State Insurance Fund any order entered by the court which affects the rights of the parties to the case, as well as the final disposition of said case.

"The Manager of the State Insurance Fund may, with the approval of the Secretary of Labor of Puerto Rico, compromise as to his rights against a third party liable for the damages; it being understood, however, that no extrajudicial compromise shall impair the rights of the workman or employee, or of his beneficiaries, without their express consent and approval.

"Any sum obtained by the Manager of the State Insurance Fund through the means provided in this section shall be covered into the State Insurance Fund for the benefit of the particular group into which was classified the occupation or the industry in which the injured or dead workman or employee was employed." Act No. 70, approved June 15, 1955, § 2, Sess.Laws pp. 260–264; 11 L.P.R.A. § 32.

2. Compare Czaplicki v. The Hoegh Silvercloud, 1956, 351 U.S. 525, 531, 76 S.Ct. 946, 100 L.Ed. 1387; Hobart v. O'Brien, 1 Cir., 1957, 243 F.2d 735, 740, certiorari denied 355 U.S. 830, 78 S.Ct. 42, 2 L.Ed. 2d 42.

Fund to the rights of the employee to such a recovery from a third party, the right of subrogation to be limited, however, to an amount equal to the expense incurred by the Fund in the employee's case. To this end section 31 empowers the Manager within 90 days after the decision upon the injured employee's compensation claim becomes final to institute suit in the employee's name upon his cause of action against any third party believed to be liable to him for his injuries.

Section 31 goes on to provide that if the Manager fails to institute such an action against a third party within the period of 90 days referred to, the injured employee shall be at liberty to do so and to retain any amount recovered without obligation to reimburse the State Insurance Fund for the expenses incurred in his case. The section provides, however, that the injured employee may not institute any such action against a third party until 90 days have elapsed after the Manager's decision of his compensation claim has become final. It is this last provision which the defendant contends required the district court to dismiss the present suit as prematurely brought.

■ We need not consider whether it would have been error for the district court to deny a motion to dismiss the suit if the defendant had made such a motion before the date on which the decision of the plaintiff's compensation claim became final. For the fact is that the defendant did not make such a motion but on the contrary permitted the suit to continue to pend after that date without having made any objection to it on the ground of prematurity. Thereafter, the pendency of the suit was timely so far as section 31 of the Workmen's Accident Compensation Act is concerned. We regard it as immaterial that the suit was not dismissed and reinstituted after that date, since the law does not require

such a useless formalism. It is true that section 31 gave the Manager of the State Insurance Fund the right to institute the suit if he acted within 90 days after the decision of the plaintiff's compensation claim became final. But, as we pointed out in Guerrido v. Alcoa Steamship Co., 1 Cir., 1956, 234 F.2d 349, 358, if the Manager institutes the suit he must prosecute it in the employee's name and need not disclose in the pleadings the fact that he is prosecuting it, that being "a matter involving the subrogation rights of the Manager and the disposition of the proceeds of the litigation with which the respondents are not concerned." Section 31 is not intended to provide a shield for a third party tort-feasor whose only legitimate concern is to be protected against double liability,[3] against which the statute fully protects him as we also pointed out in the Guerrido case, 234 F. 2d 349, 358.

It follows from what has been said that the prosecution of the present suit was validly carried on in the plaintiff's name after the decision of the plaintiff's compensation claim became final and that the judgment entered in his favor cannot now be attacked upon the ground that the suit was prematurely brought. Whether the Manager of the State Insurance Fund is entitled to receive by way of subrogation out of the proceeds of the judgment recovered by the plaintiff in the present case the amounts paid by him out of the Fund in the plaintiff's compensation case we need not now decide. Whether the Manager is entitled to such subrogation rights may depend upon whether he actually did take over or join in the prosecution of this suit at some time within 90 days after his decision on the plaintiff's compensation claim became final or is nonetheless entitled to such rights because the independent prosecution of the suit by the plaintiff during that period of 90 days prevented him from doing so or whether

3. Compare Hobart v. O'Brien, 1 Cir., 1957, 243 F.2d 735, 740, certiorari denied 355 U.S. 830, 78 S.Ct. 42, 2 L.Ed. 2d 42; Jay v. Chicago Bridge & Iron Co., 10 Cir., 1945, 150 F.2d 247, 249; Crab Orchard Imp. Co. v. Chesapeake & O. Ry. Co., 4 Cir., 1940, 115 F.2d 277.

on the other hand, the Manager's failure to take over or join the prosecution of the suit, if that was the fact, operated to deprive him of his subrogation rights.[4] These, as we have pointed out, are matters between the plaintiff and the Manager with which the defendant is not concerned. It is sufficient for the defendant that, as we have already pointed out, the present judgment will bar a second suit against it on the same cause of action whether brought by the plaintiff individually or by the Manager in the plaintiff's name.

The defendant further contends that even if the present suit is not dismissible as prematurely brought it should have been dismissed because the general maritime law of unseaworthiness, upon which the suit in part is based,[5] is not in force in Puerto Rican waters. It asserts that our opinion in Fonseca v. Prann, 1 Cir., 1960, 282 F.2d 153, certiorari denied subnom. 81 S.Ct. 826, supports this view. The contention is utterly without merit. In Guerrido v. Alcoa Steamship Co., 1 Cir., 1956, 234 F.2d 349, 355, we held "that the rules of the admiralty and maritime law of the United States are presently in force in the navigable waters of the United States in and around the island of Puerto Rico to the extent that they are not locally inapplicable either because they were not designed to apply to Puerto Rican waters or because they have been rendered inapplicable to these waters by inconsistent Puerto Rican legislation." We are still of the same view.

In the Fonseca case we held that the Puerto Rico Workmen's Accident Compensation Act had rendered the general maritime law of unseaworthiness inapplicable to Puerto Rican waters so far as suits by injured seamen against their employers are concerned. In the Guerrido case, however, we had pointed out that Puerto Rican legislation, such as the Workmen's Accident Compensation Act, could not supplant a general rule of maritime law which Congress in the exercise of its constitutional power has expressly made applicable to Puerto Rican waters in common with all other American waters.[6] It was after quoting this caveat in the Guerrido case and in the light of it that we said in the Fonseca case that "we are not aware that Congress has ever taken action to make the general maritime law of unseaworthiness apply in those waters" [282 F.2d 153, 156–157], the statement upon which the defendant bases its present contention. We went on to point out in the Fonseca case that if Congress should take such affirmative action it would have the effect of supplanting the Workmen's Accident Compensation Act by the general law of unseaworthiness so far as concerns the rights of seamen injured in Puerto Rican waters against their employers.

As we demonstrated in the Guerrido case, the general maritime law of unseaworthiness had become applicable in

4. On this question we note the provisions of the fifth paragraph of section 31 of the Workmen's Accident Compensation Act as amended which would seem to contemplate that a judgment in or a compromise of a suit prosecuted independently within the 90 days period by the injured employee would be valid and effective provided the expenses incurred by the State Insurance Fund in his case are provided for. But see Negron v. Industrial Commission, 1954, 76 P.R.R. 282.

5. The plaintiff's claim was also based, as we have seen, upon the law of negligence. It is not clear whether the defendant makes the same contention with respect to the applicability of that law to Puerto Rican waters. In view of our conclusion with respect to the law of unseaworthiness we need not consider that question.

6. It would appear that such legislation would not be inconsistent with the compact with the Commonwealth of Puerto Rico since section 9 of the Puerto Rican Federal Relations Act recognizes that "The statutory laws of the United States not locally inapplicable, except as hereinbefore or hereinafter otherwise provided, shall have the same force and effect in Puerto Rico as in the United States * * *." 48 U.S.C.A. § 734.

Puerto Rican waters without express enactment by Congress, subject to being supplanted in whole or in part by Puerto Rican legislation. And since Congress has not made the law of unseaworthiness expressly applicable, to the exclusion of the Workmen's Accident Compensation Act, to seamen injured in Puerto Rican waters suing their employers we held in the Fonseca case that the Compensation Act did have the effect of supplanting in such cases the maritime law of unseaworthiness which is otherwise in force in Puerto Rican waters. We were, of course, dealing only with the right claimed by the seaman in that case to sue his employer for damages by reason of the unseaworthiness of the vessel upon which he was injured in Puerto Rican waters. The right of a seaman or longshoreman, such as the present plaintiff, to base a suit against another than his employer upon the maritime law of unseaworthiness was not involved in that case and our discussion had no relation to it.

■ The finding of the district court in the present case that the ship was unseaworthy is not disputed. Nor is it questioned that a longshoreman who is injured in Puerto Rican waters by reason of the unseaworthiness of a vessel owned by one who is not his employer may enforce his rights in a civil action as well as in a suit in admiralty.[7] We conclude that the contentions made by the defendant in support of its appeal are wholly without merit.

■ We turn then to consider the contentions which the plaintiff makes on his appeal. These are two. The first is that the district court erred in awarding only $15,592.81 on account of loss of future earnings instead of $18,292.03. The court found that the plaintiff will suffer an annual reduction of earnings of $1,000 during his remaining working years and it commuted this loss to a present sum of $15,592.81 using an interest or discount factor of 5% per annum. It is the plaintiff's contention that the discount factor should be 4% per annum

which if it had been used would have produced a present sum of $18,292.03. The plaintiff relies upon Alexander v. Nash-Kelvinator Corporation, 2 Cir., 1959, 271 F.2d 524, 527, in which the court held that the use of a discount factor of 2½% per annum was erroneous and that the factor should be "not less than 4 per cent." Certainly, 5% is not less than 4%. The Alexander case is thus hardly authority for the plaintiff's contention. We think that the discount rate to be used in the commutation of the plaintiff's future loss of earnings was peculiarly within the discretion of the trial judge and that there was no abuse of that discretion in selecting the rate of 5% per annum for use in Puerto Rico.

The plaintiff's second contention is that the sum of $2,500 awarded to him for conscious pain and suffering experienced and to be experienced was so inadequate as to be clearly erroneous. Counsel for the plaintiff urges that the award should have been $233,600, computed at the rate of $7,300 a year ($0.80 per hour) for 32 years. With respect to this finding the trial judge stated in his opinion:

"The indicated figure is arrived at as fairly and reasonably compensating him for such conscious physical and mental pain and suffering as he has already sustained, and with reasonable certainty will experience in the future, as the result of his fall. The court flatly rejects the suggestion of plaintiff that this item should be subjected to mathematical computation upon an hourly or daily rate throughout his life expectancy. His life expectancy has indeed been considered in arriving at the figure, but not to the extent to which the court has been urged."

■■ The determination of the damages to be awarded for pain and suffering was for the trial judge and his award may not be upset unless it is clearly erroneous. Alexander v. Nash-Kelvinator Corporation, 2 Cir., 1959, 271 F.2d 524,

7. See Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1090.

527. We think that the trial judge was fully justified in rejecting the plaintiff's request to compute this award upon an hourly, daily or yearly rate throughout the plaintiff's expected life. Our review of the evidence has not convinced us that the award of $2,500 was so grossly inadequate as to constitute clear error. The plaintiff's contentions on his appeal must be rejected.

Judgment will be entered affirming the judgment of the District Court, without costs to either party.