**Miguel A. LOPEZ-CORREA, Plaintiff,**

v.

**MARINE NAVIGATION CO., Inc. and Marine Transport Lines, Inc., Defendants.**

**Civ. No. 241–68.**

United States District Court
D. Puerto Rico.

Sept. 18, 1968.

Antonio M. Bird, San Juan, P. R., for defendants.

Nachman, Feldstein, Laffite & Smith, San Juan, P. R., for plaintiff.

MEMORANDUM OPINION

FERNANDEZ-BADILLO, District Judge.

This is an action by a longshoreman to recover damages for injuries sustained on board a vessel because of the

alleged negligence of the defendants and unseaworthiness of the vessel.

Defendants have alleged in their answer, as an affirmative defense, that at the time of the injury they had subcontracted the loading and unloading operations of the vessel to a stevedoring contractor; that the plaintiff was employed by said stevedoring contractor in connection with the loading and unloading operations of the vessel which was afloat on navigable waters within the territorial limits of Puerto Rico; that said stevedoring contractor had insured its employees, including the plaintiff, under the provisions of the Puerto Rico Workmen's Accident Compensation Act; [1] that the plaintiff applied for and was awarded compensation under said act for the injuries sustained while working aboard the vessel; that defendants were plaintiff's statutory employer under the Act and hence that this court lacks jurisdiction over the subject matter and that plaintiff is barred from bringing this action.

Plaintiff has moved to strike this affirmative defense on the ground that it is insufficient in law because 11 L.P.R.A. § 32 specifically provides for an action against the third party such as the vessel owner herein for injury sustained while working.

The question to be determined rests on the development and the extent of the applicability of the general maritime law to the territorial waters of the Commonwealth of Puerto Rico, and on the correct interpretation of the provisions of the Puerto Rico Workmen's Accident Compensation Act.

The essence of the matter is whether the doctrine established in the case of Musick v. Puerto Rico Telephone Company, 357 F.2d 603, 1st Cir. (1966), is applicable to an action against a shipowner arising out of an accident occurred by a longshoreman while working aboard a vessel in Puerto Rican waters for an independent stevedoring contractor employed by the shipowner, when the stevedoring contractor had insured its longshoremen under the Puerto Rico Act.[2]

In the *Musick* case it was held, in sum, that under the Workmen's Compensation Act of Puerto Rico, " * * * the employee of an insured independent contractor or subcontractor cannot entertain a tort action against the primary contractor." (page 605) When we enter into the consideration of the applicability of this doctrine to the longshoremen cases, we must bear in mind that the state of the law of admiralty and its applicability to the territorial waters of the Commonwealth of Puerto Rico is different from that of the States of the Union and, therefore, we must consider this problem under the light of the decisions interpreting its applicability to Puerto Rican waters and not so to those of the States.

There is a long line of decisions of our Court of Appeals for the First Circuit holding that a longshoreman sustaining injuries while working in discharging his employer's vessel on navigable waters within the territorial limits of Puerto Rico may not maintain an action for unseaworthiness or negligence against his employer, owner of the vessel, who is insured under the Puerto Rico Workmen's Accident Compensation Act. In order to establish a clear picture of the present state of the admiralty law in Puerto Rico, let us examine briefly those leading cases which show its development.[3]

In the first of these cases, Lastra v. New York & Puerto Rico Steamship Co.,

---

1. 11 L.P.R.A. § 1 et seq.

2. As I shall discuss later on more fully in due course, in Alcoa S. S. Co. v. Pérez Rodríguez, 376 F.2d 35, 1 Cir. (1967), it was held that such an action against a shipowner could not be maintained if the injured longshoreman was directly employed by the shipowner who was insured under the Puerto Rico Act.

3. Additional analyses of those cases may be found in: Inter Island Shipping Corp. v. Industrial Commission, 1963, 89 D.P.R. 648 (89 P.R.R. ——); Vicente M. Ydrach, Court Decisions Regarding Maritime Law in Puerto Rico, XXVI Revista del Colegio de Abogados de Puerto Rico, pp. 121–142 (1966); Salvador E. Casellas, Federal and Com-

2 F.2d 812, 1st Cir. (1924), it was held that the admiralty and maritime law of the United States was not in force to any extent in the navigable waters of Puerto Rico. This doctrine was based on the provisions of the Second Organic Act of Puerto Rico of 1917, under which the harbor areas and navigable streams and bodies of water and submerged lands underlying the same in and around Puerto Rico and adjacent islands and waters, not reserved by the United States for public purposes, were placed under the control of the Government of Puerto Rico to be administered for the benefit of the People of Puerto Rico. This doctrine remained unchanged until the decision of Guerrido v. Alcoa S. S. Co., 234 F.2d 349, 1st Cir. (1956), in which the court modified the position taken in *Lastra* and, relying on the general doctrine that the maritime law should be uniform across the nation, held that, under the Constitution, Congress has power to legislate in the field of admiralty and maritime law, as it sees fit. It also held that when the Foraker Act of 1900, which was Puerto Rico's First Organic Act, required the Federal Commissioner of Navigation to make such regulations as he may deem expedient for the nationalization of all vessels owned by the inhabitants of Puerto Rico and for the admission of the same to all the benefits of the coasting trade of the United States and that the coasting trade between Puerto Rico and the United States shall be regulated in accordance with the provisions of the law applicable to such trade between any two great coasting districts of the United States, it thereby showed that it was evidently intended, not only to nationalize all Puerto Rican vessels as vessels of the United States and to admit them to their coasting trade, but to place Puerto Rico substantially upon the coast of the United States. On this reasoning the court concluded that the Foraker Act showed a

congressional intent that the Federal Maritime Law at least in the field of domestic shipping should be applicable in Puerto Rico; that the inclusion in 1906 of Puerto Rico as a great district for the administration of domestic shipping laws on a parity with other territories, as Alaska and Hawaii, was significant as indicating that Congress intended the maritime law of the United States to be applicable in Puerto Rico just as in Alaska and Hawaii.

The Court of Appeals went further to state that the provisions of the Second Organic Act of Puerto Rico of 1917 must be read in the light of the fact that the general maritime law of the United States was already in force in Puerto Rican waters at the time when they were enacted. That while conferring power upon the Legislature of Puerto Rico to act in this field and in validly enacting legislation to supersede inconsistent rules of the maritime law, the Second Organic Act of 1917 did not purport to repeal forthwith as to Puerto Rico the existing rules of the law and this Act contained a specific proviso that all laws of the United States for the protection and improvement of the navigable waters of the United States and the preservation of the interests of navigation and commerce, except so far as the same may be locally inapplicable, shall apply to Puerto Rico and its adjacent islands and waters. Inasmuch as this provision remains in force as part of the present Puerto Rico Federal Relations Act,[4] the court concluded that the rules of the admiralty and maritime law of the United States are presently in force in the navigable waters in and around Puerto Rico to the extent that they are not locally inapplicable either because they were not designed to apply to Puerto Rican waters or because they have been rendered inapplicable to these waters by inconsistent Puerto Rican legis-

monwealth Jurisdiction in the Field of Maritime Law, XXVI Revista del Colegio de Abogados de Puerto Rico, pp. 259–279 (1966); 61 Col.L.Rev. 1170 (1961).

4. Law 600, 64 Stat. 319; 48 U.S.C. Sec. 731 et seq.

lation.[5] The Court made it clear that this did not mean to say that the Puerto Rican Legislature could thus supplant a rule of maritime law which Congress in the exercise of its constitutional power has expressly made applicable to Puerto Rican waters. It also concluded that the Workmen's Accident Compensation Act of Puerto Rico covers maritime workers injured or killed in the territorial waters of Puerto Rico, except to the extent that it may have been superseded as to any class of maritime workers by compensation legislation passed by Congress and intended to apply to all navigable waters of the United States.

With the *Guerrido* decision as background, in 1960 the decision in the case of Fonseca v. Prann, 282 F.2d 153, cert. denied 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed. 2d 822, was handed down by the Court of Appeals for the First Circuit. This was an action in which appellants were seamen and members of crews of vessels, who were injured while at work in their respective vessels when afloat on navigable waters within the territorial limits of the Commonwealth of Puerto Rico. Their employers had insured their employees under the Puerto Rico Workmen's Compensation Act and each appellant applied for and was awarded compensation under said Act. Following this, each ap-

pellant brought suit in the United States District Court for Puerto Rico against his employer to recover under the Jones Act, 48 U.S.C. Sections 731 et seq. for negligence and under the general maritime law for unseaworthiness. The United ed States District Court entered summary judgments for the respondents on the ground that the seamen's only remedy against their employers was afforded by the local Workmen's Compensation Act. The Court of Appeals, distinguishing these cases from that of Southern Pacific Co. v. Jensen, 1917, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, stated that the present status of the Commonwealth of Puerto Rico is not that of a state of the Union, nor even that of a territory incorporated to the Union preparatory to statehood. As such, the Government of Puerto Rico has such powers as Congress from time to time has seen fit to give it.

Relying on the rationale of the decision in the *Lastra* case, supra, the Court stated that Congress conferred full power of control over local navigable waters upon the Government of Puerto Rico to the complete exclusion of the admiralty and maritime law of the United States. Then, following the language contained in the *Guerrido* case, supra, went on to conclude that neither the Jones Act, nor the general maritime law of unseaworthi-

---

5. When the *Guerrido* decision turned to consider the Puerto Rican legislation, its attention was focused on Section 31—11 L.P.R.A. § 32—of the Workmen's Accident Compensation Act of Puerto Rico, which was copied *in toto* in the body of the opinion and which was taken as the basis for maintaining the action against the vessel and her owners. Section 31 grants to an injured workman or employee the right to recover damages from a third party tortfeasor other than his employer. The Court of Appeals considered the vessel and her owners a third party, as compared to the stevedoring company which had employed the injured workman and which the vessel's owners had contracted to handle the cargo, and held that the Puerto Rican law was not, therefore, inconsistent with the applicability of the maritime law of unseaworthiness. Nevertheless, it is very important to point out

at this time that Section 15, paragraph 3, and Section 19 of the Puerto Rico Workmen's Accident Compensation Act—11 L.P.R.A. §§ 16, 20—were not brought up to the attention of the Court of Appeals. These sections were the ones interpreted by the Court of Appeals in the *Musick* case and, as already said and will further be explained, they were considered to mean that when work is done through an independent contractor or subcontractor the primary contractor is considered an employer of the workmen employed by the independent contractor within the scope of the Act.

A similar situation came up in Waterman Steamship Corporation v. Rodríguez, 290 F.2d 175, 1 Cir. 1961, where the Court of Appeals circumscribed to focus its attention on Section 31, supra, of the Puerto Rican Act, without its attention having been directed to Sections 15 and 19, supra.

ness are inherently inapplicable in Puerto Rico, but that, on the other hand, there is nothing in the Jones Act specifically making its provisions applicable in the territorial waters of Puerto Rico and that the court was not aware that Congress had ever taken action to make the general maritime law of unseaworthiness apply in these waters. That instead, in the *Lastra* and *Guerrido* cases it had held that Congress, in the valid exercise of powers conferred upon it by the Constitution, gave the Legislature of Puerto Rico power to enact legislation inconsistent with the Jones Act and the general maritime law and the Legislature of Puerto Rico had exercised such power in passing the Workmen's Compensation Act.

In Waterman Steamship Corporation v. Rodríguez, 290 F.2d 175, 1 Cir. (1961) the Court of Appeals consistently insisted on adhering to the above views as expressed in prior opinions.[6]

Further, in the most recent case, Alcoa Steamship Company, Inc. v. Pérez Rodríguez, 376 F.2d 35, 1 Cir. (1967), the Court of Appeals specifically held that in the Commonwealth of Puerto Rico a longshoreman who sustains injuries while unloading his employer's vessel on navigable waters within the territorial limits of Puerto Rico may not maintain an action for unseaworthiness against his employer or his vessel when his employer is covered by the Puerto Rico Workmen's Accident Compensation Act. The court expressly adhered to the views expressed in the prior opinions of *Lastra, Guerrido* and *Fonseca,* to the effect that the Puerto Rico Workmen's Accident Compensation Act has displaced, within the area of its applicability, the remedies of the maritime law, including the Federal Longshoremen's Act, and provides the sole remedy of a Puerto Rico longshoreman against his employer for injuries sustained in the course of his employment.

■ From the history and development of the applicability of the admiralty and general maritime law of the United States to the territorial waters of Puerto Rico there appear clearly established the following premises:

(1) The admiralty and general maritime law of the United States generally applies within the territorial waters of the Commonwealth of Puerto Rico, except when it has been made inapplicable either by an express provision of Congress or when it has been made inapplicable by an Act of the Legislature of Puerto Rico.

(2) Congress has the power to make any admiralty or maritime law applicable to the territorial waters of Puerto Rico to the exclusion of local legislation, but to the present has elected not to do so.

(3) In passing the Workmen's Accident Compensation Act, the Legislature of the Commonwealth of Puerto Rico made inoperative the admiralty and general maritime law to the territorial waters of Puerto Rico within the area of applicability of said Act.

(4) The Workmen's Accident Compensation Act of Puerto Rico applies to maritime workers.

■ On the other hand, the Supreme Court of Puerto Rico reaffirmed the doctrine that the Legislature of the Commonwealth of Puerto Rico has the power to enact legislation inconsistent with the Jones Act and the general maritime law and that, therefore, the Legislature exercised this power in enacting the Workmen's Compensation Act. Inter Island Shipping Corp. v. Industrial Commission, 1963, 89 D.P.R. 648 (89 P.R.R. ——).

■■ This Court is further bound by the decisions of the Supreme Court of Puerto Rico interpreting the Puerto Rico Workmen's Compensation Act. The Supreme Court of Puerto Rico has consistently held that the sole remedy of a covered employee, injured in the course of his employment, is to obtain compensation under the Act and that he is barred

---

6. See note 5, supra.

from suing his employer. United Porto Rican Sugar Co. v. District Court, 1933, 44 P.R.R. 904; Onna v. The Texas Co., 1945, 64 P.R.R. 497; De Jesus v. Osorio, 1946, 65 P.R.R. 601; Inter Island Shipping Corp. v. Industrial Commission of Puerto Rico, supra; Cortijo Walker v. Puerto Rico Water Resources Authority, 1964, 91 D.P.R. 574 (91 P.R.R. ——); Marcano Torres v. Puerto Rico Water Resources Authority, 1965, 91 D.P.R. 654 (91 P.R.R. ——); and Andino v. Puerto Rico Water Resources Authority, 1966, 93 D.P.R. 170 (93 P.R.R. ——).

With the above established premises, let us now examine the decision of the Court of Appeals in Musick v. Puerto Rico Telephone Company, 357 F.2d 603, 1 Cir. (1966), and the extent of its application to an action brought by a longshoreman in Puerto Rico against a shipowner for damages sustained while working aboard the vessel in the employment of an independent stevedoring contractor who is insured under the Puerto Rico Workmen's Accident Compensation Act.

In *Musick* an employee of a subcontractor was injured while working on the job for the principal contractor. He applied for and recovered compensation under the Workmen's Compensation policy of his employer, the subcontractor, and later, alleging that his injuries were the result of the negligence of the principal contractor, brought an action for damages against the latter. Plaintiff predicated his case on the theory that the principal contractor was a third party subject to the ordinary liability of one who has injured another. This theory was based on the provision of the Puerto Rico Workmen's Compensation Act which allows for the pursuit of a negligent third party who has through his negligence caused an accident compensable under the Act. (Section 31; 11 L.P.R.A. § 32).[7]

The Court of Appeals held, in sum, that the employee of an insured *independent contractor or subcontractor* cannot entertain a tort action against the principal or primary contractor. This is so, be-

cause under the provisions of the Workmen's Compensation Act the principal or primary contractor is considered to be an employer of the employees working for the independent contractor or subcontractor. This is so regardless of whether said principal contractor is himself insured under the Act. His status as "employer" does not vary with the fact of whether he is insured or not; the only change which occurs is as regards his responsibilities and difficulties towards the injured worker. (Sections 15, 17, 18; 11 L.R.R.A. 16, 18, 19).

The language in *Musick* leaves no doubt that under the provisions of Section 15, supra, the party employing an independent contractor is an employer, under the Act, of the independent contractor's employees. The only object of Section 19 of the Act is to impose upon the employer of the workman, whether it be the principal or the subcontractor, the obligation to insure the employees. (Section 19; 11 L.P.R.A. 20).

This provision is directed solely to procure by all possible means the protection of the employees and to that effect makes the principal contractor liable under his policy if he fails to make his independent contractor or subcontractor get an insurance policy to cover its employees under the Act. See P. R. Am. Sugar Refinery v. Industrial Commission, 63 P.R.R. 611 (1944). *Musick* then states that the principal contractor need not pay premiums to insure the employees of its independent contractor if he has made sure that the independent contractor has provided coverage for them. Once the principal contractor or employer has made sure that his independent contractor has taken out insurance to protect his employees, he himself, as employer of them, is insured.

The type or kind of action taken by the principal employer to make sure that his independent contractor has complied with the Act is immaterial to determine whether he is also insured or not. It makes no difference whether he so explicitly de-

---

7. See note 5, supra.

manded in the contract with the independent contractor or whether the latter did so voluntarily as an ordinary custom in the industry to comply with the law. Such difference cannot have any effect because the obligation of the principal employer as it appears in the Act remains so without any distinction whatsoever. If the independent contractor insures his employees, the principal employer is also covered by the Act and need not pay premiums for them. On the other hand, if the independent contractor failed to get the insurance, the principal employer is under the full obligation to provide it. The important question is that if the independent contractor or subcontractor has insured his employees under the provisions of the Workmen's Compensation Act, the protection of exclusiveness of remedy provided for in Section 20 of the Act extends to also apply to and protect the principal contractor or employer.

If, as previously seen, it is an established matter of law that the Workmen's Compensation Act of Puerto Rico extends to cover maritime workers and that the Legislature of the Commonwealth of Puerto Rico in enacting said Act made the admiralty and general maritime law inapplicable in the territorial waters of Puerto Rico, it is inescapable that the doctrine established in the *Musick* case fully applies to the action at bar.

The plaintiff claims that in the *Musick* case defendant Puerto Rico Telephone Company, was an insured employer under the Workmen's Accident Compensation Act of Puerto Rico, supra; and that Sec-

tion 19 of said Act—11 L.P.R.A. § 20 [8]— requires that before a party can allege that he is a statutory employer under the Act, he must be an insured employer. Although the Court of Appeals took defendant, Puerto Rico Telephone Company, to be a "generally insured employer",[9] plaintiff's contention is absolutely wrong.

If a party were an insured employer there would be no need of claiming in his behalf the "statutory employer" concept. It is precisely because he is not insured that he claims to be covered by said concept in order to protect himself when he performs work through an independent contractor who is insured.

Puerto Rico Workmen's Compensation Act does not define the word "employer" or the phrase "employer covered by this chapter" (see Musick, 357 F.2d, page 605), but the Act is definitely applicable to all employers employing one or more workmen or employees covered therein, whatever their wages may be. (Section 2, 11 P.R.A. § 2). Moreover, section 25 of the Act (11 L.P.R.A. § 26) classifies employers who are subjected to a levy of premiums under the provisions of the Act into regular or permanent and eventual or temporary employers. In the latter case the levy of premiums is for such time as their operations may last, but whatever the case may be, employers must insure under the Act or otherwise confront the unpleasant consequences that it imposes to non-insured employers, including criminal responsibility. (Sections 17 and 18; 11 L.P.R.A. §§ 18, 19). Because of these provisions, any employ-

8. "Every insured employer shall, on reporting his annual payrolls, include in said payrolls the wages paid to all the workmen and employees working for or employed by him, whether by the job or under some person with whom the employer contracted for the job, or under a contractor or independent subcontractor employed or contracted by said employer; and all accounts or taxes collected by the State shall be based on the employer's current payroll in which shall be included the above-mentioned laborers; Provided, That this provision shall not be applicable to employers for whom

work is done by an independent contractor who is insured as an employer under the provisions of this chapter."

9. It seems that the Court of Appeals took this as a presumption upon considering the facts involved in the case of Porto Rican American Sugar Refinery, Inc. v. Industrial Commission, 1944, 63 P.R.R. 611, cited in the memorandum of this District Court in the *Musick* case, and also cited by the Court of Appeals in note 1, page 604, of its opinion in said case.

er, such as a shipowner, from outside Puerto Rico who comes to the island and directly performs work, such as loading or unloading cargo, with workmen from Puerto Rico by a contract entered into in Puerto Rico, is obliged to insure or otherwise suffer the consequences. The only way to escape those consequences without insuring is to perform said work through an independent contractor who has insured and thus become a "statutory employer" under Section 15 of the Act, complemented by Section 19, supra.

Section 19 in its entirety was cited by the Court of Appeals in its *Musick* opinion (note 5, page 605). It was thoroughly considered, together with Section 15—11 L.P.R.A. § 16—of the Act and construed to mean that the party employing an independent contractor is an "employer" of the independent contractor's employees. The Court, upon interpreting Sections 15 and 19 and arriving at the above conclusion, did not take into account its prior presumption of "generally insured employer". As a matter of logic it had to be that way because Section 19 does not include such requirement in order to be an employer in the case of a primary contractor in an independent contractor relation. The Court of Appeals held that Section 19 "clearly draws a distinction between insured and uninsured independent contractors" and that the language of said section "merely states that the 'employer' need not pay the premiums if this has been done by the

independent contractor. In other words, the concept continues, but, not unreasonably, the suggestion that premiums should be paid twice is negatived." (*Musick* opinion, page 605). So, it is clear that to be a "statutory employer" under the Act there is no need of being an otherwise insured employer and thus pay premiums twice.

[9] Counsel for plaintiff also argue that the question of law which is here considered was equally set forth in the case of Alcoa S. S. Co. v. Pérez Rodríguez, supra, that several pages of the briefs for appellants were devoted to sustain the applicability of the *Musick* case to the controversy and that, nevertheless, the Court of Appeals ignored the *Musick* argument.[10] This argument is frivolous. No court is bound to express all the grounds possible in support of a decision. Within its discretion it can reserve those which are not considered necessary to found its decision, if it has expressed those which were felt to be sufficient for its determination.

Plaintiff invokes a series of cases on his behalf which are inapposite. A group of those cases[11] is not controlling here because they interpret and apply federal legislation such as the Longshoremen's and Harbor Workers Compensation Act, 33 U.S.C. § 901 et seq., which are not applicable to the case at bar. Alcoa Steamship Company v. Pérez Rodríguez, (1 Cir., 1967) 376 F.2d 35, cert. den. 389 U.S. 905, 88 S.Ct. 215, 19 L.Ed.2d 219.[12]

---

10. Attorneys for plaintiff served as counsel for the appellees in the case of *Pérez Rodríguez* and they are also engaged in other cases before this Court in which the same question of law is set forth. This opinion has taken into consideration all the points raised in all the briefs filed in the other cases.

11. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Gutiérrez v. Waterman Steamship Corporation, 1963, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297; De Vincenzi v. Waterman Steamship Corporation, N.D. Cal.1957, 156 F.Supp. 481, and many others.

12. On page 39 of the opinion in that case it is said:

"In any event it is clear that in the present case we need not determine the exact scope of the *Yaka* decision. [Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448]. For in that case the Supreme Court was dealing with the exclusive remedy provision of the federal Longshoremen's and Harbor Workers' Compensation Act as to the construction of which it is the final authority. Here, however, we are not dealing with a federal statute but rather with a statute of the Commonwealth of Puerto Rico as to the meaning and scope of which it is not the federal courts, but rather

Another group of cases [13] also invoked by plaintiff does not control here because the point of local law raised herein was not involved in those cases and the Court's discussion therein had no relation to it.[14] In none of these cases was it claimed that the defendant shipowner was the statutory employer of the injured longshoreman.

To summarize, the Court of Appeals for the First Circuit has repeatedly recognized that when the application of the Puerto Rico Workmen's Compensation Act is involved, a matter of local law is under consideration and the courts of Puerto Rico will have the final determination as to its meaning and scope.[15] Alcoa Steamship Company v. Pérez Rodríguez, supra; Musick v. Puerto Rico Telephone Company, supra; Fonseca v. Prann, supra. As we have already said, the Supreme Court of Puerto Rico has held that the local Compensation Act extends to apply to injuries to Puerto Rican maritime workers. Inter Island Shipping Corporation v. Industrial Commission, supra. This holding has been accepted and followed by the Court of Appeals. Alcoa Steamship Company v. Vélez, 376 F.2d 521, 524, 1 Cir.; Alcoa Steamship Company v. Pérez Rodríguez, supra, 376 F.2d pp. 38–39. On the other hand, the Supreme Court of Puerto Rico has held that the local Compensation Act establishes the concept of "statutory employer" to be applied to a primary contractor in an independent contractor relation, where the workmen or employees are employed by the independent contractor. Porto Rican American Sugar Refinery, Inc. v. Industrial Commission,

63 P.R.R. 611 (1944); Montaner, Mgs. v. Industrial Commission, 59 P.R.R. 284 (1941). This holding has also been followed and enlarged by the Court of Appeals in the *Musick* case, supra. I find, therefore, no reason why the "statutory employer" concept should not be applied, *mutatis mutandi*, to a primary contractor of the shipping industry in an independent contractor relation, where maritime workers are employed by an independent stevedoring contractor.

The above conclusions are consistent with what the Supreme Court of Puerto Rico has considered to be the legislative policy on workmen's compensation in Puerto Rico. See Cortijo Walker v. Puerto Rico Water Resources Authority (1964) 91 D.P.R. 574 (91 P.R.R. ——). This recent decision emphasized the philosophy of a unified system of compulsory compensation administered by the government for the benefit of the workmen to the complete exclusion of any other redress against the employers who comply with the Act. The Supreme Court of Puerto Rico said in this case: "We are not going to open a gap in the compensatory system by a 'jurisprudential exception', and in any event let the lawmaker have his say." [16] Actually this is a matter of public policy for the political powers of the government of Puerto Rico to establish and thereafter alter according to the prevailing social and economic conditions or in response to public demands, but not for the judicial branch to determine and regulate. The Legislative Assembly of Puerto Rico has so far not differentiated between maritime workers and other Puerto Rican workers

---

the courts of Puerto Rico, which have the final determination. In making that determination the views of the Supreme Court in the *Yaka* case with respect to the federal act might well be persuasive but would surely not be binding upon the Puerto Rico Courts. (Brackets added).

13. Guerrido v. Alcoa, supra; Waterman Steamship Corporation v. Rodríguez, supra; Compañía Transatlántica Española, S. A. v. Meléndez Torres, 358 F.2d 209, 1 Cir. (1966).

14. See note 5, ante. It is therefore, a *non sequitur* to say that the scope given herein to the *Musick* case goes so far as to reverse Guerrido v. Alcoa, supra.

15. See note 12, ante.

16. See Feliciano et al. v. Compañía Transatlántica Española, S. A., 286 F. Supp. 226, Order entered June 28th, 1968 by the subscribing District Court Judge.

in order to exclude in any sense the former from the general policy of applicability of the Workmen's Compensation Act. Thus, the *Musick* doctrine, interpreting the Act, must be applied equally to maritime and to any other class of workers.

Even if Congress in the exercise of its constitutional powers decided to change this policy, it would surely do it in accordance with Puerto Rico's compact (Law 600, 64 Stat. 319, 48 U.S.C. Sec. 731 et seq.) and in clear and explicit terms. But Congress has so far not deemed it advisable and it is not the function of the courts so to do. Our Court of Appeals has also consistently adhered to this position. In Fonseca v. Prann, supra, 282 F.2d page 157, this Court said:

> " * * * Of course if Congress sees fit it may supplant the local legislation as it applies to local navigable waters by making the Jones Act and the general maritime law of unseaworthiness specifically applicable in Puerto Rican waters, but it is not our function to do so."

And in Alcoa Steamship Company v. Pérez Rodríguez, supra, 376 F.2d page 38, repeated:

> " * * * We have been referred to no Puerto Rico statute or congressional enactment which has modified our holding in the *Guerrido* case that the local workmen's compensation act supplanted the law of unseaworthiness in respect to locally employed maritime workers. Moreover, particularly in view of the unique status of Puerto Rico, we think that if and when Congress deems it advisable to extend law to Puerto Rico which would otherwise have been inapplicable to that Commonwealth, it will do so in clear and explicit terms."

One word of clarification needs to be said as regards the decision of Alcoa Steamship Company, Inc. v. Vélez, 376 F.2d 521, 1 Cir. (1967). In said case the Court of Appeals held that the provisions of the Puerto Rico Workmen's Accident Compensation Act do not cover seamen who have been employed in the continental United States and who are working temporarily in the navigable territorial waters of Puerto Rico as crew members of foreign owned vessels when they are injured. The term "foreign" was used in the sense that the vessels are owned by corporations incorporated in other states of the Union other than the Commonwealth of Puerto Rico. Consequently, the vessel owners were not under the obligation to pay premiums under the Workmen's Compensation Act of Puerto Rico for the time that their crews temporarily remained within the territorial waters of Puerto Rico. In that case, different from the one at bar, the employees were seamen who were actually employed under federal maritime laws outside of Puerto Rico and their only contact with Puerto Rico was when their vessel entered the waters of Puerto Rico for a temporary visit in the course of its voyage. Besides that, it also was evident from the provisions of the Puerto Rico Workmen's Compensation Act itself that it was the intention of the Legislature of Puerto Rico in passing said Act to exempt from its provisions the technical personnel protected by laws of other jurisdictions. In the *Alcoa* case the court expressly stated:

> " * * * By the Act of May 16, 1958, No. 16, p. 19, the Legislature enacted an exemption as to technical personnel protected by laws of other jurisdictions. 11 L.P.R.A. § 28a. In the statement of motives, inter alia, appearing in the Act appears the following:
>
> > 'By express provision of the workmen's accident compensation statutes, or by judicial order, the laws in the continent generally have extraterritorial effect, so that when workmen are hired in the various states, they are subject to the Workmen's Compensation Act of the State where they are hired. We are facing the same situation as regards the employment of technical personnel im-

ported from the United States of America.

'Since our statute establishes compulsory insurance, the firms employing such technical personnel would be bound to maintain double insurance in connection therewith.

'It is convenient to industry in general, and to the employers affected, that a reasonable standard be established to prevent duplication in the payment of such premiums.' (See note, 11 L.P.R.A. § 28a.)

Here is a clearly expressed intention by the Legislature of Puerto Rico that its Workmen's Accident Compensation Act shall not be used as a vehicle to require the maintenance of duplicating compensation insurance by an employer."

In the case at bar, different from the situation of the foreign seamen in the *Vélez* case, the longshoreman (plaintiff) employed by the independent contractor is a resident of Puerto Rico who has been hired in Puerto Rico to perform work of loading and unloading vessels exclusively within the territorial waters of Puerto Rico. There is no doubt whatsoever that his employer, the stevedoring contractor, is under the duty to insure him under the Workmen's Accident Compensation Act and that, under the principles of the law, the principal contractors (defendants shipowners) are under the obligation to see that the independent contractor insures him or, if it failed to do that, would be bound, as "statutory employers" of the longshoreman, to insure him under the Act for the activities carried out of loading and unloading of ships within the territorial waters of Puerto Rico.

Finally, there is an ultimate matter raised by the attorneys for plaintiff

which I deem to be frivolous, but which I believe should not be passed by for it deals with the delicate rule of comity. The distinguished Chief Judge Hiram R. Cancio of this Court has already decided in other cases the very issue involved herein and ordered the affirmative defenses stricken as insufficient in law.[17] Plaintiff's counsel alleges that "[I]n the federal court structure rulings of judges of coordinate jurisdiction on the same issue, are generally followed under the doctrine of comity", and that "orderly judicial administration prevents one District Judge from sitting as an appellate court on his brother judge, in the absence of an intervening controlling decision of a court of more controlling authority".

This argument constitutes gross error on the part of plaintiff's attorneys and, as shown by further discussion, is a manifest distortion of a different doctrine. But even if there were doubt concerning this matter, knowing as I have known Chief Judge Cancio for many years, I am sure he would not hesitate in agreeing with me as to our legitimate right to dissent on questions of law and to express our divergent views in a frank and honest manner, except when barred by a clear and express prohibition of a judicial administrative nature to do so. As we shall see no such prohibition exists and both Chief Judge Cancio and I believe that "lack of comity" would precisely exist if we were manacled and unable to express what we honestly believe. On the other hand, I wish to assert here that, aware of Chief Judge Cancio's learning of the law, I had to delay delivering this opinion because of the desire of assuring myself that in dissenting from him it was done with utmost thoughtfulness and intellectual conviction.

---

17. Vázquez Guzmán v. Indian Towing Company, Civil No. 213–65, Order of May 15, 1967; Maldonado Rivera v. South Atlantic & Caribbean Lines, Inc., Civil No. 413–67, Order of August 30, 1967; Véléz Negrón v. Waterman Steamship Corporation, Civil No. 841–67, Order of June 25, 1968; Alméstica v. Caribbean Bulkcarriers, Inc., Civil No. 553–67, Order of July 8, 1968. Senior Judge Henry N. Graven, sitting by assignment, in Villegas Rondón v. Karl Graumerstorf Schiffahrts, GMBH, Civil No. 426–67, Order of January 19, 1968, followed Chief Judge Cancio's ruling in the above cases.

The doctrine, which counsel for plaintiff have misunderstood and attempted to misapply in this case, postulates that judges of coordinate jurisdiction sitting in the same court and in the same case, should not overrule the decisions of each other. Circuit Judge Rogers, of the Second Circuit, in the case of Commercial Union of America v. Anglo-South American Bank (C.C.A. 2, 1925) 10 F.2d 937, made a detailed study of the application of this doctrine in the federal courts and also in some local jurisdictions. On page 940 of 10 F.2d the opinion states the following:

"We have at some length set forth the rulings of the federal courts on the effect of a decision made by a trial judge upon the right of a judge *sitting subsequently in the same court and in the same case* to overrule the decision of the first judge on the same matter. We have done so because the question raised is important, and has to do with the dignified and orderly procedure of the courts, and is a departure from what has been regarded heretofore in this and in the other circuits as improper and not to be countenanced". (Emphasis supplied)

The *Commercial Union* case has been cited repeatedly by other courts, Price v. Greenway (C.C.A. 3, 1948) 167 F.2d 196, 199–200, and all of them make it clear that the doctrine is limited to judges of coordinate jurisdiction, sitting in the same court and in the same case. See also Jurgenson v. National Oil & Supply Co. (C.C.A. 3, 1933) 63 F.2d 727, 729; T.C.F. Film Corporation v. Gourley (C.A. 3, 1957) 240 F.2d 711, 713; United States v. Wheeler (C.A. 3, 1958) 256 F.2d 745, 746, cert. den. 358 U.S. 873, 79 S.Ct. 111, 3 L.Ed.2d 103.[18] It has been held that even in the same case the rule is not absolute and all embracing in its scope. United States v. Mathies (C.A. 3, 1965) 350 F.2d 963, 964; T.C.F. Film Corporation v. Gourley, supra.

The case at bar is concededly not the same case as any of those where Chief Judge Cancio decided the question of law also raised herein and differently decided. Therefore, the rule of comity and of necessity above discussed is not herein applicable and I am not restrained from ruling differently. I feel very strongly that I am bound by the decisions of the Court of Appeals for the First Circuit and the Supreme Court of Puerto Rico in this opinion cited and that I am not required to follow the interpretation of the law made by my distinguished colleague in a different case.

In view of the foregoing, plaintiff's motion to strike is hereby denied and an order shall be entered accordingly.

18. It is interesting to notice that in this Court recently a district judge, sitting by assignment, overruled and reversed the decision of another district judge, also sitting by assignment, on the same matter in the same case. This happened in the following two cases:

1). Yolanda Ríos Cortés, et al. v. Commonwealth of Puerto Rico, et al., Civil No. 62–66: Motion to Dismiss Complaint on the ground of sovereign immunity denied by Order of Judge Ewig T. Kerr entered July 26, 1967; the same motion granted by Order of Judge William N. Goodwin entered December 18, 1967.

2). Daniel Salkin, et al. v. Commonwealth of Puerto Rico, et al., Civil No. 662–66: similar Motion to Dismiss denied by Order of Judge Kerr entered July 26, 1967; the same motion granted by Order of Judge Goodwin entered December 19, 1967.