419 F.2d 143
 JONES STEVEDORING COMPANY, a corporation, Appellant,
v.
NIPPO KISEN COMPANY, LTD., a corporation, Appellee.
NIPPO KISEN COMPANY, LTD., a corporation, Appellant,
v.
STOCKTON BULK TERMINAL COMPANY OF CALIFORNIA, INC., a corporation, Appellee.
 No. 22630.
 United States Court of Appeals Ninth Circuit.
 November 28, 1969.
 
 Ronald H. Klein (argued) and Robert C. Taylor, San Francisco, Cal., for appellant Jones Stevedoring Co.
 John W. Ford (argued), Graydon S. Staring, and Tristam B. Brown, of Lillick, McHose, Wheat, Adams & Charles, San Francisco, Cal., for appellee Nippo Kisen Co., Ltd.
 Robert H. Partridge (argued) of Partridge, O'Connell, Partridge & Fall, San Francisco, Cal., for appellee Stockton Bulk Terminal Co. of California, Inc.
 Before BARNES, KOELSCH and KILKENNY*, Circuit Judges.
 BARNES, Circuit Judge.
 
 
 1
 This is an appeal from a judgment in favor of Nippo Kisen Company, Ltd. (hereinafter "Nippo") and against Jones Stevedoring Company (hereinafter "Jones").
 
 
 2
 One Joseph F. Mastro, a longshoreman, was injured aboard the MV HOKYO MARU, a vessel owned by Nippo, while it was berthed in navigable waters of the United States at Stockton, California.
 
 
 3
 He sought judgment against Nippo based on the negligence of Nippo and the unseaworthiness of the ship. The district court first heard the issue of liability. It found the sole cause of the accident was the negligence of Mastro. It found no negligence on the part of Nippo, and no unseaworthiness of its vessel.
 
 
 4
 Meanwhile, Nippo had impleaded two third-party defendants: appellant Jones and appellee Stockton Bulk Terminal Company of California (hereinafter "Stockton"), seeking indemnity with respect to any payment to Mastro by way of judgment or settlement (which did not occur), and in addition, attorneys' fees and costs of defense (which the court, in hearing the remainder of the case, set at "$7,132.90, with court costs and interest from March 4, 1966" (R.T. 139)).
 
 
 5
 The principal question on this appeal is which of the two third-party defendants, Jones or Stockton, should be required to pay Nippo. A secondary question is the date from which the award of interest was made.
 
 
 6
 The court below had jurisdiction in admiralty (28 U.S.C. § 1333) and our jurisdiction rests on 28 U.S.C. § 1291.
 
 
 7
 The trial court, on conflicting evidence, determined that Mastro was Jones' employee (Supp. Finding 1, R. 139).[1]
 
 
 8
 Appellant attacks this as a conclusion of law and not a finding of fact. It is, perhaps, a little of each. As in various troublesome areas, we frequently find grey areas between the two.
 
 
 9
 Appellant further urges that the finding is completely erroneous. We cannot agree. A careful perusal of the facts leaves us with no "definite and firm conviction that a mistake has been committed" by the district court. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).
 
 
 10
 And we must, of course, respect Rule 52 of the Federal Rules of Civil Procedure. This requires us to favor the "position of advantage"[2] the trial court holds over an appellate court. That it utilized its advantageous position is demonstrated by its close questioning of witnesses on the very factual issue here involved (R.T. 216-219), and its rulings on evidence (R.T. 209, 230, 231). This is peculiarly the type of case where the trial court's factual findings should be carefully checked, weighed and considered before being rejected by an appellate court.
 
 
 11
 Stockton has no stevedores working for it — "The only employees that the Stockton Bulk Terminal Company ever had were the administrative managerial employees. * * * We used Jones to hire the men. * * * The immediate supervision was * * * provided by Jones." (Gatov.Rep., pp. 5-7.)
 
 
 12
 Further, Jones carried workmen's compensation insurance and the report, though signed by Goodwin (Stockton's employee), was presented to and paid by Jones' compensation carrier. As the trial court observed: "Ordinarily you don't make a claim for workmen's compensation benefits on behalf of an employee if he isn't an employee." (R.T. 230-231.) And see LaBolle v. Nitto Line (Jones Stevedoring Co.), 268 F. Supp. 16, 18 (N.D.Cal.1967).
 
 
 13
 Mastro thought he worked for Jones, "I got my money from Jones Stevedoring Company." (R.T. 95.)
 
 
 14
 Further, the Pacific Maritime Association (P.M.A.) is the bargaining agent for various stevedoring companies with the International Longshoremen & Warehousemen's Union (I.L.W.U.) (R.T. 47, et seq.) Jones was a member of P.M.A. By the latter's agreement with I.L.W.U., P.M.A. members could get longshoremen through the I.L.W.U. hiring hall in Stockton. Only members of P.M.A. could do this — Stockton could not "employ" longshoremen, gang bosses or walking bosses from the Union hall.
 
 
 15
 We quote in the margin from the Brief of Appellee Stockton, which seems accurately to describe the question of control of the longshoremen.[3]
 
 
 16
 We need add nothing further but to say the determination of the trial court is far from being "completely erroneous."
 
 
 17
 As to the award of interest, the question is whether interest should be allowed on defense costs from the time Nippo paid its attorneys, or from the time the award against Jones was made by the court.
 
 
 18
 Both sides agree this is a matter of judicial discretion. The first portion of the trial was in March 1965, the second portion was May 1967, and the final judgment was entered October 30, 1967. Appellants urge that this delay was "intentional," and that the court abused its discretion in the award. Appellees first reply that no objection was made below to interest from date of shipowner's payment, and hence the objection was waived, American Home, etc. Co. v. Hargrove, 109 F.2d 86, 87 (10th Cir. 1940); Adams v. United States, 318 F.2d 861, 865 (9th Cir. 1963), and secondly, that there was no abuse of discretion, it being the court's duty to grant interest if necessary to provide "just compensation." President Madison, 91 F.2d 835, 847 (9th Cir. 1937).
 
 
 19
 We find no abuse of discretion in the trial court's holding that appellee Nippo was entitled to await a determination in this Circuit of Arista Cia. De Vapores S.A. v. Howard Terminal, 372 F.2d 152 (9th Cir. 1967), decided February 9, 1967. Had it been decided other than it was, it would have perhaps mooted this case. To pursue the issue immediately would have undoubtedly resulted in additional appeals, and perhaps further delay.
 
 
 20
 The judgment of the district court is in all respects affirmed.
 
 
 
 Notes:
 
 
 *
 Hon. John F. Kilkenny, then United States District Judge, Portland, Oregon, was sitting by designation when this case was heard
 
 
 [1]
 "* * * Joseph F. Mastro was at all material times employed as a longshoreman by Jones Stevedoring Co., and not by Stockton Bulk Terminal Company of California, Inc."
 
 
 [2]
 United States v. Oregon State Medical Society, 343 U.S. 326, 339, 72 S.Ct. 690, 96 L.Ed. 978 (1952)
 
 
 [3]
 "Prior to and at the time of the case in question, there existed an oral contract or arrangement to provide longshoremen to operate the loading equipment owned by Stockton Bulk Terminal Co. (Deposition of A. W. Gatov, p. 10; R.T. May 8, 1967, p. 46). The terms of this agreement are not in dispute; only the nomenclature describing the agreement is disputed. Rudolf J. Danska (Vice President of Jones) testified it was a `payroll service' (R.T. May 8, 1967, p. 48). A. W. Gatov, President of Stockton Bulk Terminal Co., testified that Jones was a `labor contractor' (Deposition of A. W. Gatov, p. 7)
 "The method of operation was as follows: longshoremen, gang bosses, and walking bosses were supplied by the I.L. W.U. hiring halls to work, pursuant to Jones' membership in P.M.A. and their contract with the I.L.W.U. (R.T. May 8, 1967, p. 50); the longshoremen and walking boss were ordered by telephone by Leo Goodwin, manager of Stockton Bulk Terminal Co., in the name of Jones (R.T. May 8, 1967, pp. 50, 74); the men provided were a complete `Union set-up' consisting of a walking boss, gang boss and hold men (Deposition of A. W. Gatov, p. 7) and were `supplied' by Jones (R.T. May 8, 1967, p. 6 — from testimony of Rudolf Danska); and were all on Jones' payroll (R.T. March 22, 1965, p. 100). The walking boss reported aboard the ship one hour early, and would receive orders from the manager or assistant manager of Stockton Bulk Terminal Co. for `starting the ship. That's all.' (Testimony of Leo Goodwin, R.T. May 8, 1967, pp. 77, 78). The gang boss was assigned to report to the walking boss and the longshoremen to report to the gang boss (R.T. March 22, 1965, pp. 97, 98). The chain of command was from the manager or assistant manager of Stockton Bulk Terminal Co. to the walking boss and thence from the walking boss to the gang boss and from him to the longshoremen (R.T. March 22, 1965, pp. 99, 119). Sometimes the gang boss or walking boss received orders direct from the ship's mate (R.T. March 22, 1965, pp. 24, 27). The extent of the supervision by Stockton Bulk Terminal Co. was to inform the walking boss of the `layout of the work', `how much is going into what hatch' (R.T. May 8, 1967, p. 75). The walking boss, gang boss and longshoremen were responsible for the operative details of the work, including rigging the gear (R.T. March 22, 1965, p. 72), and spotting the ship (R.T. March 22, 1965, p. 122 and R.T. May 8, 1967, p. 76).
 "The payroll was handled on the following basis: the walking boss, gang boss and longshoremen were all on Jones' payroll (R.T. March 22, 1965, p. 100), the payroll is made up by one of the men in the gang, either the walking boss or gang boss (R.T. May 8, 1967, p. 61 — testimony of Danska); it is made up in the name of Jones Stevedoring (R.T. March 22, 1965, p. 93); it is then transmitted to Jones, who processes it in its office and reports same to P.M.A. to obtain payment of the men by P.M.A. in accordance with the agreement between the P.M.A. and I.L.W.U. for the account of Jones (R.T. May 8, 1967, pp. 55, 56). This is the way payroll is handled in the stevedoring industry `in every case', `this one and others' (R.T. May 8, 1967, p. 66).
 "Jones then bills these charges back to Stockton Bulk Terminal Co. with a service charge (R.T. May 8, 1967, p. 56). Stockton Bulk Terminal Co. paid to Jones the entire amount of the payroll, plus all assessments, plus a profit (Deposition of A. W. Gatov, p. 12).
 "Neither Jones nor Stockton Bulk Terminal Co. contracted with the Ship (Deposition of A. W. Gatov, p. 17). Stockton Bulk Terminal Co. contracted its facilities to the Port of Stockton (Deposition of A. W. Gatov, pp. 16, 19) and contracted, in turn, with Jones to hire the men to operate the equipment (Deposition of A. W. Gatov, pp. 6, 7).
 "On the occasion of this accident, Libelant Mastro was employed out of the Union hall as a gang boss (R.T. March 22, 1965, p. 22). He was assigned to the ore dock and reported to the walking boss (R.T. March 22, 1965, pp. 97, 98). Jones employed the walking boss, gang boss and longshoremen. Mastro made out the payroll in the name of Jones and was, in fact, paid through P.M.A. by Jones (R.T. March 22, 1965, pp. 93, 95). He generally got his orders from the walking boss, but since the walking boss was out to lunch at the time of the accident, he got his orders from the ship's mate (R.T. March 22, 1965, pp. 64, 65).
 "The mate instructed Mastro to load ore aft in the hatch (R.T. March 22, 1965, pp. 36, 37). Mastro was supervising the gang (R.T. March 22, 1965, pp. 64, 65) and made the decision that a snatch block had to be moved in order to pour aft (R.T. March 22, 1965, p. 72). It was while implementing the details of this rigging problem that the accident occurred." (Brief for Appellee Stockton Bulk Terminal Co. of California, Inc., pp. 9-12.)