421 F.2d 390
 Manuel G. ROSA, Managing Owner, Circle L Investment
Corporation, Antonia Garcia Da Rose, John H. Avila, Manuel
Pestana, Victorino Garvia Da Rosa, Manuel De Souza, Jose Da
Graca, Jose Enginio Da Graca, Edward J. Correia, Plaintiffs-Appellees,
v.
The INSURANCE COMPANY OF the STATE OF PENNSYLVANIA, a
corporation, Defendant-Appellant.
 No. 24442.
 United States Court of Appeals Ninth Circuit.
 Jan. 21, 1970.
 
 William James Zumwalt, San Diego, Cal., for defendant-appellant.
 Robert O. Curran (argued), of Curran, Golden, McDevitt & Martin, San Diego, Cal., for plaintiffs-appellees.
 Before MERRILL and ELY, Circuit Judges, and CROCKER,* District judge.
 MERRILL, Circuit Judge.
 
 
 1
 This is a suit on two marine insurance policies: one covering the hull and skiff of the fishing vessel, Belle of Portugal; the other covering the cargo.
 
 
 2
 The Belle of Portugal, sailing out of San Diego, was lost at sea off the coast of South America on December 19, 1966. Cause of the loss was an electrical fire. The crew abandoned ship, took to the power skiff and were picked up by a British freighter, the Port Adelaide. The crew of the Port Adelaide attempted to hoist the skiff aboard but was unsuccessful and the skiff sank and was lost. The deck log of the Belle of Portugal evidenced the extent of the ship's cargo of tuna at the time of sinking. The District Court rendered judgment against the insurer in the sums of $215,000 for the loss of the vessel, $9,000 for loss of the skiff, and $99,140 for loss of cargo, plus interest on the amount due for loss of vessel and skiff dating from the insurer's written denial of liability. The insurance company appeals as to each item of damages.
 
 1. Loss of the Vessel
 
 3
 The 'California Fishing Vessels (1959)' attachment to the policy is standard in form and contains a common perils clause which states in part: '* * * touching the adventures and perils which we, the assurers, are contented to bear and take upon us, they are of the sea, men-of-war, fire * * *.' The policy also provided: 'Warranted to be subject to English law and usage as to liability for and settlement of any and all claims.'
 
 
 4
 Appellant contends that the fire was due to the negligence of a shoreside electrician. It offered proof of this fact; that offer was rejected by the District Court as irrelevant. This is assigned as error. Appellant contends that a fire so caused is not a peril of the sea.
 
 
 5
 Fire, however, is specified as an insured peril in itself. Under English law the fact that cause of the fire can be traced to negligence of captain, crew or agents of the ship owner will not defeat recovery. As a British court has stated in an analogous situation:
 
 
 6
 'In this case, however, the loss is occasioned by fire, against which the assured is protected by the terms of the policy; and, in our law at least, there is no authority which says that the underwriters are not liable for a loss, the proximate cause of which is one of the enumerated risks, but the remote cause of which may be traced to the misconduct of the master and mariners * * *' Busk v. Royal Exchange Co., 2 Barnewall & Alderson 73, 80, 106 Eng.Rep. 294 (1818); see 2 Arnould Marine Insurance, 818 at 774.
 
 
 7
 We find no error with respect to this portion of the judgment.
 
 2. Loss of the Skiff
 
 8
 Appellant contends that the loss of the skiff was due to the negligence of the Port Adelaide crew; that since such negligence was not insured against in the policy, the insurance company is not liable.
 
 
 9
 There is no proof of negligence (other than the testimony of the captain of the Belle of Portugal who stated that he was told that the operation of hoisting the skiff was not properly done). Even if there were evidence of negligence, however, the 'Inchmaree' clause of the insurance policy covers losses due to the negligence of 'mariners.'[1]
 
 
 10
 We find no error with this portion of the judgment.
 
 3. Loss of Cargo
 
 11
 Cargo was covered by a separate policy to which the law of California applied. That policy provided in part: 'Insurance to attach when vessel(s) advise Carl and Carl Insurance, Inc. of the amount of fish on board. Vessel is permitted to report at various times throughout the voyage. No insurance to attach hereunder unless message is received and confirmed in San Diego that the vessel had taken on a load of not less than one-fourth of her carrying capacity.'
 
 
 12
 Prior to the loss the only report received was to the effect that 70 tons of fish (less than one-fourth capacity) were aboard. Shortly after loss the full cargo was reported. Appellant contends that insurance had not attached at the time of loss.
 
 
 13
 This contention was rejected by the District Court on two grounds. First the court found the policy ambiguous and resolved that ambiguity against the insurance company on the authority of California law. Preferring the second ground, we need not and do not reach the issue so presented.
 
 
 14
 The District Court also held that under the policy terms the failure to report promptly was excused. The policy provided: 'This policy shall not be prejudiced by any unintentional delay or omission in the reporting hereunder.' The court found that the near capacity cargo claimed by plaintiffs was substantiated by the deck log, and continued:
 
 
 15
 'While there was some question regarding the reporting of the fish aboard,[2] the evidence is substantial and credible that on December 7, 1966, the master of the BELLE OF PORTUGAL reported to Alvin Rosa, son of one of the owners, who was acting in a managerial capacity that, the vessel had approximately 70 tons of fish aboard. Alvin Rosa relayed this report on the same day to Mr. Charles T. Carl, the insurance agent. Captain Goulart testified that during the last three days of the voyage he was unable to report because of heavy rain which curtailed the sending capacity of the radio.'
 
 
 16
 These findings are not, on the record, clearly erroneous.
 
 
 17
 The court also found that there never was any intentional delay or omission in reporting,[3] and concluded that the errors and omissions clause was applicable.
 
 
 18
 In the light of the court's findings the judgment of liability for loss of cargo was not error.
 
 4. Accrued Interest
 
 19
 The District Court awarded interest on the sums due under the hull policy at 7 per cent, dating from appellant's final written denial of liability (April 1, 1967). Appellant argues that such interest is justified only when defendant's acts are reckless or wanton in seeking to avoid liability; a reasonable belief in the validity of the defense precludes awarding of prejudgment interest. Appellant recognizes that the awarding of interest is discretionary, but asserts that the court below exceeded the scope of its discretion. We disagree.
 
 
 20
 Appellant erroneously assumes that prejudgment interest is in the nature of a penalty. The objective, rather, is to provide 'just compensation' for the plaintiffs. Jones Stevedoring Co. v. Nippo Kisen Co., 419 F.2d 143 (9th Cir. November 28, 1969). As such, the awarding of interest is broadly discretionary, in admiralty as elsewhere. See Gardner v. National Bulk Carriers, Inc., 333 F.2d 676 (4th Cir. 1964). The court below did not abuse this discretion.
 
 
 21
 The judgment is affirmed.
 
 
 
 *
 Honorable M. D. Crocker, United States District Judge for the Eastern District of California, sitting by designation
 
 
 [1]
 The 'Inchmaree Clause' (paragraph 3 of the 'California Fishing Vessels (1959)' attachment to the hull policy) provides as follows:
 'This insurance also specially to cover * * * loss of or damage to hull or machinery directly caused by the following:--
 Negligence of master, charterers, mariners, engineers or pilots; Provided such loss or damages has not resulted from want of due diligence by the owners of the vessel, or any of them, or by the managers. Masters, mates, engineers, pilots or crew not to be considered as part owners within the meaning of this clause * * *.'
 Another attachment to the policy makes this coverage applicable to the skiff.
 
 
 [2]
 The captain also stated that he had been fishing in Ecuadorian waters without a license issued by that government and consequently did not wish to disclose his presence
 
 
 [3]
 The District Court also stated: 'There is no evidence that there was any intent not to report.' Appellant asserts that this is clearly wrong in light of the captain's statement (note 2, above). A reluctance to report at the moment, even for the reasons given, does not, however, demonstrate an intention 'not to report.' As the court found, the captain ultimately did report