**Oscar LaBOLLE, Plaintiff,**
v.
**NITTO LINE et al., Defendants.**

**NITTO SHOSEN KISEN KAISHA, a corporation, Cross-complainant,**
v.
**JONES STEVEDORING COMPANY, a corporation, Cross-defendant.**

**Civ. No. 40330.**

United States District Court
N. D. California.

April 6, 1967.

As Amended May 16, 1967.

## MEMORANDUM OPINION AND ORDER

GEORGE B. HARRIS, Chief Judge.

On December 22, 1965, this court entered a final judgment in the amount of $13,803.11 in favor of plaintiff LaBolle in the main action, a diversity suit involving maritime law. That judgment was predicated on appropriate findings of fact and conclusions of law wherein it was found that defendant Nitto Line was in breach of its warranty of seaworthiness to plaintiff causing him to fall through an open hatch in a darkened area on the MS DOWA MARU while he was looking for a place to hang his coat, preparatory to commencing his longshoring duties. Defendant was adjudged not guilty of negligent conduct. Plaintiff on the other hand was held to be contributorily negligent. He proceeded into a completely darkened area in a state of heavy intoxication.

Prior to the trial of this cause, and pursuant to the provisions of Rule 14, F.R.Civ.P., defendant Nitto Line was given permission to file a cross-complaint against third-party defendant Jones Stevedoring Company for indemnification for any and all liability Nitto may be subjected to as a result of LaBolle's suit.

According to established court practice and since the liability of Jones depended on different principles, Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 355 U.S. 563, 568, 78 S.Ct. 438, 2 L.Ed.2d 491 (1957), the issue of the shipowner's liability to the longshoreman was tried first with counsel for the stevedoring company in attendance throughout the entire presentation.

This then was the posture of the proceedings when it again came before the court on March 6, 1967, for trial of the ancillary issue of indemnification between the shipowner and Jones. The parties presented their evidence and the cause was regularly argued and submitted.

The cross-complainant takes the position that it is entitled to indemnification over because Jones Stevedoring Co. breached its implied warranty of work-

---

Lillick, McHose, Wheat, Adams & Charles, John W. Ford, Tristam B. Brown, San Francisco, Cal., for defendant and cross-complainant.

Sikes, Pinney & Matthew, Leon A. Pinney, Los Angeles, Cal., for cross-defendant Jones Stevedoring Co.

manlike service in several respects thereby creating an unseaworthy condition and exposing the shipowner to liability. Moreover, "Liability should fall upon the party best situated to adopt preventative measures and thereby reduce the likelihood of injury." Italia Societa, etc. v. Oregon Stevedoring Co., 376 U.S. 315, 319, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964).

The court concludes that the evidence preponderates in favor of the shipowner in this regard. First, it is uncontroverted that the longshoreman was allowed to board the vessel in a state of severe intoxication. The stevedoring company's own superintendent testified that he was aware, some 30 minutes before the accident took place, that LaBolle was not in full control of his faculties, and further that he ordered the walking boss to replace him on the shift that evening. A subsequent blood-alcohol test established a marked degree of intoxication.

Secondly, it is admitted that LaBolle entered the darkened and unlit area of the No. 2 hatch without any source of illumination in violation of the United States Department of Labor Safety Rules for Longshoring. Jones, however, denies that LaBolle was permitted to so proceed and that his venture was a lark, not within the scope of his employment. With this the court cannot concur.

The longshoreman was an employee of Jones and under its supervision. It was in the best position to control the movements of its employees. Further, the company paid full compensation to LaBolle because of the injuries sustained, liability for which is incurred only where an employee is injured in the course and scope of his employment. Permission may be either expressed or implied. There is present ample evidence that LaBolle was given a work number and directed by the walking boss to proceed to the No. 2 hatch, the area in question. That he might look for a place to hang his coat near and about the hatch in question is neither unreasonable nor unforeseeable.

As hereinabove noted, plaintiff was found to be guilty of contributory negligence. Notwithstanding, "The stevedore company's duty under its warranty includes the duty to provide longshoremen who will exercise reasonable care for their own safety, as well as for the safety of others, in the performance of their work. Failure of a longshoreman to safely perform his duties constitutes a breach of the stevedore's warranty rendering the stevedore company liable for all harm to the shipowner resulting from the breach. This is true whether negligence of the longshoreman injures only himself or others." Arista Cia. De Vapores, S.A. v. Howard Terminal, 372 F.2d 152 (9th Cir. 1967).

Conflicting evidence was presented on the issue of whether or not the trimming hatches were used in this particular ore-loading operation, and at whose instance they were opened before entering port. Jones presented the testimony of one Kettlelhaight, a general maintenance man, who stated in substance that the trimming hatches were never used for any purpose. He was unable to testify with knowledge as to the custom and usage of the industry at the Port of Stockton, California, re having vessels dock with the hatches open. The court has given little weight to such observations since the witness stated he had never participated as a longshoreman in any loading or unloading operations. His duties were restricted to maintaining equipment in and around the docks.

The stevedoring superintendent, Spears, on the other hand, stated that it was customary at the time of the accident for vessels to open the trimming hatches before docking and that any vessel not so prepared would be advised not to present itself in that condition again. Spears further testified that the trimming hatches were in fact used to equalize the load level at places of difficult access for the spout. The deposition of the master of the MS DOWA MARU supports this position, that is, that the stevedoring company advised the vessel to open the trimming hatches before tieing up.

Moreover, the position of cross-defendant that the conduct of the shipowner in this regard is sufficient to preclude indemnification since a pre-existing unseaworthy condition existed is untenable in two respects. First, " * * * it is clear that, as between themselves, the contractor, as the warrantor of its own services, cannot use the shipowner's failure * * * to * . * * correct the contractor's own breach of warranty as a defense." Ryan Stevedoring Co. v. Pan-Atlantic Corp., 350 U.S. 124, 134, 135, 76 S.Ct. 232, 238, 100 L.Ed. 133 (1955). Secondly, "The mere fact that a defect existed on the ship does not preclude the shipowner from being indemnified by the stevedoring company where it is found that the primary cause of the accident was the negligence of the stevedoring company. Unseaworthiness and negligence have been held not to operate as a bar to recovery against the stevedoring contractor. * * * " Compania Trasatlantica Espanola, S. A. v. Melendez Torres, 358 F.2d 209 (1st Cir. 1966).

Finally, there is no conflict in the evidence that the area surrounding the open hatch was unlit. Having ruled that the cross-defendant had knowledge in fact of this pre-existing condition and that it was within the scope of foreseeable passage and proximate to the No. 2 hatch loading operations, the court is duty bound to find that the failure of Jones to provide adequate lighting therein created an unsafe place of work for its employees thereby creating an unseaworthy condition of the ship.

"Since Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., Inc., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964), there can be no reasonable doubt that the stevedore's implied warranty to the shipowner is governed by the same standard as and is coextensive with the shipowner's obligation to seamen and others in that category." Seattle Stevedore Co. v. Compania Maritima and Maritime Co. of the Philippines, 373 F.2d 9 (9th Cir. Jan. 27, 1967.)

Accordingly, the court concludes that the conduct of the stevedoring company created and brought the unseaworthiness of the vessel into play, and amounted to a breach of its implied warranty of workmanlike service owing to the shipowner. As such, the cross-plaintiff is entitled to recover over the full amount of its liability to the longshoreman.

Counsel for the cross-complainant has indicated that an additional sum of $3,000 is requested, that amount representing attorney fees incurred in the defense of this litigation. Being reasonable and just, said fees in the above amount should be borne by the cross-defendant, in addition to defense expenses of $753.39.

Findings of fact and conclusions of law may be prepared consistent with the foregoing.