**FIREMAN'S FUND INSURANCE COMPANY, Defendant, Appellant,**

**v.**

**Antonio SANTORO et al., Appellees.**

**No. 6807.**

United States Court of Appeals
First Circuit.

Heard Feb. 10, 1967.

Decided April 13, 1967.

**158**

Juan Enrigue Geigel, San Juan, P. R., with whom Guillermo Silva, Hernan G. Pesquera and M. A. Gimenez Munoz, San Juan, P. R., were on brief, for appellant.

Roberto J. Matos, San Juan, P. R., with whom Luis Fernandez Ramirez, San Juan, P. R., was on brief, for Antonio Santoro, appellee, and with whom Rafael A. Gonzalez, San Juan, P. R., was on brief for Valencia Service Co., Inc., appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Plaintiff brought this action against defendants, Valencia Service Company, Inc., Concreto Mixto, Inc., and their respective insurance carriers, Fireman's Fund Insurance Company and United States Casualty Company, for damages for personal injuries arising out of a four car collision allegedly caused by the fault or negligence of either or both of the two first named defendants. After a six day trial, the jury returned a verdict of $36,000 but against Valencia and Fireman's only—and judgment was entered against them in that amount. Shortly thereafter Fireman's moved that this judgment be amended so as to limit its liability to $24,000 and that plaintiff be required to recover the balance from Valencia. In support of its motion, Fireman's represented to the court for the first time that it had already paid out a total of $76,000 in settlement of three other personal injury claims arising out of the same accident [1] and consequently the limits of its liability have been reduced to $24,000.[2]

At or about the same time plaintiff filed a motion that the court award a fee for his attorney—to be assessed against defendant Fireman's. After hearing on both motions, the district court entered an order denying Fireman's motion to amend the judgment and entered a separate order requiring it to pay plaintiff the sum of $3,600 as an attorney's fee. It is from the entry of these two post-judgment orders that Fireman's appeals.

The following facts are pertinent to Fireman's motion to amend the judgment. This suit alleges damages of $100,000. Prior to the trial Fireman's settled the following claims arising out of this accident. In July 1964 it paid $36,000 in settlement of a suit alleging

---

1. Six persons, including plaintiff, were injured in this accident which occurred in Puerto Rico in February, 1964.

2. Fireman's liability was limited by the policy to a maximum amount of $50,000 for damages resulting from injuries to one person and $100,00 for damages for injuries to more than one person injured in the same accident.

damages of $250,000. Four months later it paid $35,000 in settlement of another claim and on December 1, 1965, one day before the trial of the instant case began, Fireman's settled a third claim for $5,000.

When the $250,000 suit was first brought, Fireman's notified Valencia that the damages alleged being in excess of the policy limits, it had the right to engage its own attorney to protect its interests in excess of these limits. As a consequence, Valencia retained its own attorney to work with Fireman's attorneys in defending that suit. Shortly after the trial began, that case was settled and during the next eighteen months the other two claims were also settled. Yet at no time up to and through the trial of the instant case did Fireman's ever notify Valencia that these three claims had been settled, the amounts of the settlements or the specific reductions in the policy limits by reason of these settlements. On the contrary, the record shows that some eleven months earlier when the instant suit was first brought, Fireman's wrote Valencia notifying it that the damages plaintiff was claiming exceeded the policy limits of "$50,000 for injuries to one person and $100,000 for bodily injuries arising from each accident" and that the amount of any judgment in excess of these amounts would have to be borne by Valencia.[3] For that reason, Fireman's recommended that Valencia retain its own attorney to protect its interests in excess of the policy limits but Valencia relied upon Fireman's attorneys to handle the case.

■ It is too well settled to require the citation of authority that the law imposes upon an insurer an obligation of good faith towards its insured. It is our opinion that under the facts and circumstances here, Fireman's breached this obligation by not apprising Valencia that the policy limits had been reduced by $36,000 in July 1964;[4] that these limits were further reduced by $35,000 in November 1964 and still further reduced by another $5,000 payment made the day before the instant trial—thus leaving a balance of only $24,000 to pay any judgment entered in this case. Furthermore, by reason of the misinformation contained in Fireman's letter of January 28, 1965 to Valencia, the latter was led to believe that it had $50,000 insurance coverage in this case when in fact it had only $29,000 coverage at that time and $5,000 less coverage on the date of trial. Obviously, the purpose of the letter was to notify the insured of the limits of plaintiff's recovery against Fireman's. While the information given was incorrect, Valencia was justified, under the circumstances, in relying upon it. The fact is that Fireman's estimated that the judgment would be less than $24,000. On the other hand, the insured figured it would be less than $50,000 and on the basis of Firemen's letter as to the policy limits, that the insurance would be more than adequate to pay any judgment. The jury verdict vindicated Valencia's appraisal of the case and Valencia should not be penalized because of its insurer's miscalculation.

Fireman's admits that it gave Valencia misinformation in its letter of January 1965 but endeavors to persuade us that this did not prejudice the insured. It contends that had the letter correctly informed the insured of the actual policy limits at that time, all the insured

3. At that time the actual limits of Fireman's liability under the policy had been reduced to $29,000 by reason of the first two settlements.

4. Fireman's makes much of the fact that Valencia's attorney was present when the $36,000 settlement was made in July 1964 and thus may at least be charged with knowledge that the policy limit was reduced to $64,000. Assuming this to be true, when Fireman's letter mistakenly informed Valencia that it would only be liable to plaintiff for any amount in excess of $50,000, insured would reasonably feel that as to this suit he was protected up to $50,000 because some $64,000 remained in force.

could have done anyway was to engage its own attorney to protect its interests; that since under the policy Fireman's had control of the litigation, insured's attorney could do no more than assist the insurer's attorneys. From this it argues that since there is no finding that Fireman's attorneys' handling of the litigation adversely affected the insured, it was not prejudiced.

■ This argument does not impress us. It ignores the fact that had the insured been correctly advised of the actual policy limits, it could and undoubtedly would have engaged its own attorney as it had done previously and could have and probably would have concluded a settlement within the policy limits.[5] At least Valencia would have had a good opportunity to settle the case within the actual policy limits at that time. Thus, by its conduct in not keeping its insured currently and correctly informed of the actual policy limits—throughout the pendency of this litigation and particularly at the time of trial—Fireman's greatly prejudiced Valencia. This alone is a sufficient ground on which to deny Fireman's motion to limit its liability to $24,000 and on that ground we affirm the district court's denial of the motion to amend the judgment.[6]

■ As to the district court's award of attorney's fees, suffice it to say that under Puerto Rican law trial courts are bound to grant attorneys' fees when in their opinion the party against whom judgment is rendered has been obstinate or has acted with rashness. Ortiz v. Martorell, 80 P.R.R. 525 (1958); Rodriguez v. Alcover, 78 P.R.R. 783 (1955). From our rather detailed reci-

tal of the material facts in this case, we think there is sufficient evidence to justify the district court's finding that the defendant Fireman's was obstinate. In this connection it is important to point out that at the hearing on these two motions, the local claims manager of Fireman's admitted that he knew from the beginning the insured's driver was negligent. Yet despite this knowledge, Fireman's put plaintiff to the unnecessary trouble and expense of a six day trial in which it strongly contested its insured's negligence.

■■ When an insurance company, after conducting its own investigation, concludes that the claim has merit it should so inform the court at the earliest opportunity if it wishes to escape the consequences of being adjudged obstinate. Pan American World Airways, Inc. v. Ramos, 357 F.2d 341 (1st Cir. 1966); Alonso v. Cancel, —— P.R.R. ——, June 1, 1964, (P.R. Bar Ass'n Adv. Shts., 1964–97); Valedon v. Fernandez, 79 P.R.R. 468 (1956); Soto v. Lugo, 76 P.R.R. 416, 419 (1954). We think that under Puerto Rican law Fireman's should have admitted liability here[7] and limited its defense to damages, or possibly it could have protected itself by invoking the benefit of the Federal Interpleader Act, 28 U.S.C. § 1335, see State Farm Casualty Co. v. Tashire, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (4/10/67). In not doing so it unduly prolonged the trial. This, in our opinion, furnished ample basis for awarding the attorney's fee in question, the amount of which, under the circumstances, was not unreasonable.

Affirmed.

---

5. The record shows that at the pre-trial conference plaintiff hinted that he would accept $15,000 in settlement. Fireman's at that time had evaluated the case at $10,000–$12,000 and had authority to pay $10,000 in settlement.

6. The district court denied this motion on several other grounds but in view of

this holding we do not reach these additional grounds.

7. The record indicates that Fireman's did not admit liability for fear of prejudicing its chances of obtaining a contribution from the codefendant, United States Casualty Company, to any settlement that may be made.