Carmen **CARRILLO** vda de Cerich et al., Plaintiffs-Appellees,

v.

**SAMEIT WESTBULK and Johan Hagenes, Defendants and Third-Party Plaintiffs-Appellants,**

v.

**CARIBE SHIPPING COMPANY, INC., et al., Third-Party Defendants-Appellees.**

No. 74–1204.

United States Court of Appeals, First Circuit.

Argued Feb. 5, 1975.

Decided April 14, 1975.

Rehearing Denied May 29, 1975.

Jose L. Novas Dueno, San Juan, P. R., with whom Hartzell, Ydrach, Mellado, Santiago, Perez & Novas, San Juan, P. R. and Haight, Gardner, Poor & Havens, New York City, and by Harvey B. Nachman, San Juan, P. R., with whom Nachman, Feldstein & Gelpi, San Juan, P. R., was on brief, for Carmen Carrillo vda de Cerich, and others.

Harry Adnuze Montano, with whom Rieckehoff, Calderon, Rosa-Silva & Vargas, Hato Rey, P. R., was on brief, for Caribe Shipping Company, Inc., and others.

Before COFFIN, Chief Judge, ALDRICH and McENTEE, Circuit Judges.

ALDRICH, Senior Circuit Judge.

On November 9, 1970, at San Juan, plaintiff's decedent, Cerich, a longshoreman employed by Caribe Shipping Co., Inc. (stevedore) was engaged in unloading automobiles from a hold of the M/V Westbulk, a Norwegian flag vessel owned and operated by defendants. When an afternoon rain called a halt to this activity some longshoremen sought shelter below decks. Cerich entered a car still in the hold, which could be found to be a not uncommon or forbidden practice. An hour later, the rain continuing, the whistle was sounded to signal the workday's end. Unnoticed, Cerich failed to join the longshoremen who left the vessel. Without inspecting (or without adequately inspecting), the vessel's crew closed the hatches by an automatic mechanism subject to their exclusive control, leaving the holds unlighted. The following morning, Cerich's body was discovered near a ladder at the bottom of the hold, some four or five levels below the tweendeck where he had last been seen the previous day.

In response to special questions the jury found the vessel unseaworthy, defendants negligent, and Cerich contributorily negligent to the extent of 10%, and rejected defendants' third-party complaint against the stevedore for indemnification. *See generally* Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133.[1] Defendants appeal.

---

1. Under prevailing interpretations of Congressional enactments, the general maritime law governs actions in Puerto Rico to the extent consistent with local law. *See* Alcoa Steamship Co. v. Perez Rodriguez, 1 Cir., 1967, 376 F.2d 35, 37–38, cert. denied, 389 U.S. 905, 88 S.Ct. 215, 19 L.Ed.2d 219; Waterman Steamship Corp. v. Rodriguez, 1 Cir., 1961, 290 F.2d 175, 179–80. Section 31 of the Puerto Rico Workmen's Accident Compensation Act, 11 L.P.R.A. § 32, authorizing third-party actions based upon existing law, has been held to encompass third-party claims by longshoremen under the general maritime counts of negligence and unseaworthiness. *Alcoa, ante,* 376 F.2d at 37; *Waterman, ante,* 290 F.2d at 180; Guerrido v. Alcoa Steamship Co., 1 Cir., 1956, 234 F.2d 349, 355–57. However, the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., effective November, 1972, no longer permits actions by longshoremen based upon unseaworthiness, nor claims by vessels against stevedores for indemnity, under the general maritime law. *Id.,* § 905(b). *See* Julian v. Mitsui O.S.K. Lines, Ltd., 5 Cir., 1973, 479 F.2d 432, 433–34,

■ In the district court defendants, on the issue of unseaworthiness, contended that since the hatches were not closed until Cerich's employment had terminated for the day, they no longer owed him a duty. If it could be found that he wilfully remained below, this would be an understandable position. However, there was nothing about the nature of the cargo, *i. e.*, attractive for pilfering, to make this a likely possibility. Under such circumstances defendants were on the horns of a dilemma; either they were negligent in failing to inspect in case a seaman had fallen asleep or was otherwise incapable of responding to the whistle or, if the duty of checking was the stevedore's, nonetheless defendants made the vessel unseaworthy for a longshoreman legally entitled to a safe exit. On either basis defendants had no defense on the issue of liability. The fact that they may have had a valid claim for indemnification was no defense against imposition of obstinacy damages with respect to that failure to concede. Rivera v. Rederi A/B Nordstjernan, 1 Cir., 1972, 456 F.2d 970, 975 & n. 11, cert. denied, 409 U.S. 876, 93 S.Ct. 124, 34 L.Ed.2d 128.

■ If there were some possibility of thinking Cerich 100% contributively negligent, that is, that the sole fault was his, we might have a different question. But while it was not surprising for the jury to have found contributory negligence of some sort, it seems inconceivable that any finder of fact would have placed the blame for this accident upon Cerich alone. Although defendants had a litigable issue on contributory negligence, therefore, we do not think it an abuse of discretion for the court to find obstinacy in defendants' failure to concede their liability. *Cf.* Fireman's Fund Ins. Co. v. Santoro, 1 Cir., 1967, 376 F.2d 157, 160; Soto v. Lugo, 1954, 76 P.R.R. 416, 418–19; Mercado v. American R.R. Co., 1943, 61 P.R.R. 222, 230.

Cerich's contributory negligence, however, does give rise to the initial issue raised in defendants' brief, the failure of the court to accept their views on the matter of their claim over against the stevedore for indemnification, refusing their requests to charge, and denying their motion for judgment n. o. v. against the stevedore in light of the jury's finding.

■ That a stevedore's warranty of workmanlike performance encompasses a promise to provide longshoremen free of negligence seems well settled. *See* Hartnett v. Reiss S.S. Co., 2 Cir., 1970, 421 F.2d 1011, 1018, · cert. denied, 400 U.S. 852, 91 S.Ct. 49, 27 L.Ed.2d 90; Arista Cia. DeVapores, S. A. v. Howard Terminal, 9 Cir., 1967, 372 F.2d 152, 154. The vessel's primary argument here invokes a "per se" rule of indemnification, apparently embraced in the Second, Fourth, and Ninth Circuits, that a finding of contributory negligence on the part of a plaintiff longshoreman is per se proof of a breach of warranty of workmanlike performance by his employer. *See* United States Lines, Inc. v. Jarka Corp. of Baltimore, 4 Cir., 1971, 444 F.2d 26, 28; McLaughlin v. Trelleborgs Angfartygs A/B, 2 Cir., 1969, 408 F.2d 1334, 1336, cert. denied sub nom. Golden Marine Co., Inc. v. Trelleborgs Angfartygs A/B, 395 U.S. 946, 89 S.Ct. 2020, 23 L.Ed.2d 464; *Arista Cia.*, ante, 372 F.2d at 154. However, defendants overstate the rule (and parenthetically, the stevedore understates it). The allegedly negligent conduct must be in the course of his employment. If the jury had found Cerich negligent in going to sleep, so that he could not respond to the whistle, this negligence might have been charged back to the stevedore. And if he had been hurt while attempting to leave the ship immediately after the whistle blew, and before the hatch was closed, just as the shipowner would have owed him a seaworthy vessel for the purpose of get-

cert. denied, 414 U.S. 1093, 94 S.Ct. 725, 38 L.Ed.2d 551. Nevertheless, since the current action was filed June 8, 1971, and the third-party complaint August 11, 1971, though judgment was not entered until January 16, 1974,

we need not decide whether the plaintiff's charge of unseaworthiness and the vessel's claim for indemnity might survive this change in the general maritime law because specifically authorized by the Commonwealth.

ting ashore, so, too, any contributory negligence here would be chargeable against his employer. But what, on the record, we cannot tell is when the contributory negligence found by the jury occurred. If it had been by carelessly, or foolishly, wandering around in the dark after the defendants had prevented his leaving by improperly closing the hatches, it would not be proper to charge this to his employer. *Cf.* Waterman Steamship Corp. v. David, 5 Cir., 1965, 353 F.2d 660, 664–66, cert. denied, 384 U.S. 972, 86 S.Ct. 1863, 16 L.Ed.2d 683.

█ It is elementary under principles of respondeat superior that no right of indemnity lies against an employer for actions of his employee taken beyond the scope of employment. *See* Ira S. Bushey & Sons, Inc. v. United States, 2 Cir., 1968, 398 F.2d 167, 170; Drewery v. Daspit Bros. Marine Divers, Inc., 5 Cir., 1963, 317 F.2d 425, 426–28 and n. 1.[2] However, defendants failed to request that the special question to the jury be restricted to the course of Cerich's employment.[3] It is no answer that in their final argument to the jury defendants may have confined themselves to discussing possible acts by Cerich that would, in fact, have met that test. A jury is not to be foreclosed from reaching conclusions of fact plainly warranted on the record simply because counsel may not have discussed them. There should have been a special question on course of employment or, alternatively, requests for instructions so restricted. Defendants' requests having been overbroad, their objections based on Cerich's contributory

negligence must be overruled without reaching the question whether we would adopt the per se rule, or the looser "factor" rule applied in the Fifth Circuit, *see, e. g., Julian,* note 1, *ante,* 479 F.2d at 433.

There was a basis for defendants' claim for indemnification by the stevedore other than Cerich's contributory negligence, namely, that there was a responsibility on the part of the stevedore to check that all its men had come ashore. This was a jury question that we will deal with, post, on the matter of obstinacy findings. We first consider defendants' objections with respect to plaintiff's damages.

█ In their brief defendants say that over their objection the court charged the jury that it might consider "the survivor's grief and mental anguish," and proceed to argue that this was error. We do not reach the question; defendants did not in fact adequately save their objections, either formally or informally. Because an important point of practice is involved, we go into this in some detail.

Prior to the presentation of their final arguments to the jury, the court, pursuant to F.R.Civ.P. 51, discussed with counsel the general substance of the proposed charge and noted what requests it would give and what deny. Defendants proceeded to note their objections to the proposed granting of certain of plaintiff's requests, notably No. 21. Request No. 21, relating to damages, was over a page long and certain portions of it were

2. No case, in "per se" jurisdictions or otherwise, appears to have faced this issue in the context of a maritime indemnity claim. Most simply recite that the injured longshoreman had been acting "in the course of his employment," *see Ryan, ante,* 350 U.S. at 125, 76 S.Ct. at 233; Humble Oil & Ref. Co. v. Philadelphia Ship Maintenance Co., 3 Cir., 1971, 444 F.2d 727, 729, or was injured "while working." *See, e. g.,* Weyerhaeuser S. S. Co. v. Nacirema Operating Co., Inc., 1958, 355 U.S. 563, 566, 78 S.Ct. 438, 2 L.Ed.2d 491; Chinese Maritime Trust, Ltd. v. Carolina Shipping Co., 4 Cir., 1972, 456 F.2d 192, 193 (per curiam); *Arista, ante,* 372 F.2d at 153; Waterman S. S. Corp. v. David, *ante.*

3. We note here our vigorous disagreement with the statement in plaintiff's brief that it was a "vice" to have presented the degree of contributory negligence to the jury at all. Rather, it is a wise practice, for a number of reasons. *See* Page v. St. Louis Southwestern Ry. Co., 5 Cir., 1965, 349 F.2d 820, 824, and n. 12. *Cf.* Albergo v. Reading Co., 3 Cir., 1966, 372 F.2d 83, 86, cert. denied, 386 U.S. 983, 87 S.Ct. 1284, 18 L.Ed.2d 232; Skidmore v. Baltimore & O. R. Co., 2 Cir., 1948, 167 F.2d 54, 56–70, cert. denied, 335 U.S. 816, 69 S.Ct. 34, 93 L.Ed. 371.

correct beyond question. Defendants' present claim that they objected to the inclusion of grief and mental anguish could only be supported, if at all, by their alleged general objection to the entire request. What defendants said, however, seems notably more restricted.[4]

After the charge the following occurred.

"Mr. Nachman (counsel for plaintiff). The plaintiff has no exceptions or request or additional request other than as stated prior to the calling of the jury.

Mr. Novas (counsel for defendants). Your Honor, at this time we would like to renew our objection and to take exception to the denial of such instructions on the part of your Honor.

The Court. Let the record so reflect.

Mr. Novas. In order to avoid any unnecessary waste, great wasting of time, if your Honor approved and my colleague here so stipulates I can base my objection and renew my objection and renew my exceptions just by referring to the number.

Mr. Nachman. I will stipulate that you say the exact same thing that you said before.

The Court. Exactly the same words that you originally said.

Mr. Anduze (counsel for stevedore). All right, we will stipulate that.

The Court. All right, the parties stipulate and the Court accepts the stipulation."

■ F.R.Civ.P. 51 provides in part as follows.

"No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

This means after the charge, not before, United States v. Taglianetti, 1 Cir., 1972, 456 F.2d 1055, 1057; Marshall v. Nugent, 1 Cir., 1955, 222 F.2d 604, 615, as counsel for defendants should well know. Rivera v. Rederi A/B Nordstjernan, ante, 456 F.2d at 976. The many reasons for this have been collected in Dunn v. St. Louis-San Francisco Ry. Co., 10 Cir., 1966, 370 F.2d 681, where the court noted express disapproval of an attempt, as in the case at bar, to circumvent the rule by a post-charge stipulation.

■ In our discretion we may overlook insufficient compliance with the rule, Bouley v. Continental Cas. Co., 1 Cir., 1972, 454 F.2d 85, but a party takes his chances and cannot rely on an assurance by the district court that his rights are saved. *Dunn*, ante, 370 F.2d at 684. In the case at bar defendants' procedure was altogether inadequate. And, turning to the merits, if the court's charge was in fact error, that fact is not so clear that we will treat it in the absence of timely objection.

We deal, finally, with the matter of counsel fees and prejudgment interest for obstinacy, see Puerto Rico Rules of Civil Procedure 44.4(d) and (e), a matter which from time to time has given us concern. There are dangers of its over-application. In the first place, a judge who has lived with a case that may have seemed to him to raise a very litigable question at first, may forget this, once the jury has found for the plaintiff, and think the conclusion obvious from the beginning. It is not to be overlooked, however, that this is basically a subjective[5] penalty, not a pro forma award for winning a meritorious case.

---

4. "Our last objection to plaintiffs' request for instructions deals with request for instruction No. 21 . . .. We object specifically to that part of it that includes loss of companionship as a proper item of recovery in a cause of action based on . . . the alleged breach of the seaworthiness warranty." This did not, even as of that time, properly call the court's attention, United States v. Lachmann, 1 Cir.,

1972, 469 F.2d 1043, 1044, cert. denied, 411 U.S. 931, 93 S.Ct. 1897, 36 L.Ed.2d 390, to an objection to the inclusion of grief and mental anguish, a recognized feature of Puerto Rico law.

5. By using the word "subjective" we do not mean that personal good faith is the exact test. A position may be too unreasonable to be so excused.

Secondly, desirable as it may be to have suits settled rather than tried, a practice whereby a court weighs, either at the time, or afterwards, whether a party's offer was reasonable or not would be very troublesome. It does not become less so when one realizes that the judge, concerned with a heavy calendar, is not altogether a disinterested party, no matter how well-intentioned.

We may remark, too, particularly where a plaintiff has nothing to lose by making what might be thought unreasonable demands (for a plaintiff who has no assets the rule is a one-way street) that we would be naive if we thought that threats to demand obstinacy fees if a defendant did not improve his offer were not often an important part of a plaintiff's armory. To some extent, this may be a reason for the rule, but it is easily capable of abuse.

Finally, we are troubled, even to the point of suggesting possible constitutional overtones, with the automatic award of prejudgment interest where it is found that a defendant has been obstinate in some, but not in all, particulars. As the court observed in Heirs of Trias v. Porto Rico Leaf Tobacco Co., 1941, 59 P.R.R. 228, at 229, the award of fees is for "the work necessarily done by the attorney for the adverse party." A defendant may, as here, be obstinate in not admitting liability, but not obstinate with respect to contributory negligence and damages. The necessity of proving liability may not have delayed reaching the case for trial, and its actual proof may have required but half a day, while the rest of the trial took a week. The defendant may think he was not obstinate at all—but if the court finds against him on one issue, should the plaintiff receive his counsel fees for the entire case, including those claims which the adverse party was not obstinate in resisting? We have indicated otherwise. *See* Pan American World Airways, Inc. v. Ramos, 1 Cir., 1966, 357 F.2d 341, 342.

We may similarly question, if a defendant's partial obstinacy caused no delay of any consequence, whether a penalty of prejudgment interest may involve constitutional infirmities.[6]

 None of these questions is raised with respect to the award to the plaintiff in the case at bar, as defendants have objected only to the finding of obstinacy, not to the amount of the imposition. We do, however, have a serious question regarding the award to the stevedore, third-party defendant. With respect to the claim for indemnity, the court expressly found the "evidence could have supported either conclusion." It also found that the third-party defendant seemed interested in settling, but third-party plaintiff did not. If this is all there was to it—if a party is obstinate simply because he wants to try a legitimate issue—this is not a concept of a right to trial in a free society that we would easily endorse. Nor do we think it the view of the Supreme Court of Puerto Rico. In Mercado v. American R.R. Co., ante, 61 P.R.R. at 230, for example, the court said,

> "It seems unnecessary to explain that when the circumstances of the case really justify the defendant in believing that plaintiff's pretensions lack merit, it is not bound to admit a responsibility which it, in good faith, does not believe it has."

If a party, for example, could fairly be appraised as having a 50/50 chance of winning a liquidated claim, is he obstinate if he refuses a 50% offer?

Before we endorse a principle that a party with a supportable claim is obstinate simply because it prefers to litigate than to compromise, we would want to be sure that this is the question that is before us, and we would also wish full briefing on such an important issue.

The award of counsel fees to the stevedore is vacated and the case remanded for further, or more explicit,

6. As being, for example, a penalty unrelated, or disproportionate to the offense, and one which falls upon defendants and never upon plaintiffs.

findings by the district court, with a return to this court if either party so wishes. The judgments of the district court are otherwise affirmed.

## ON PETITION FOR REHEARING

### PER CURIAM.

■ By a petition for rehearing shipowners raise a new and compound contention in support of their claim for indemnity, which essentially boils down to the assertion that the stevedore must answer for the negligence of its longshoreman even where such negligence occurred beyond the scope of their employment relationship. Shipowners base this theory upon cases holding that willful and unusually belligerent actions of a seaman, which assertedly exceed his duties unless taken in the interest of the ship, may nonetheless render the vessel unseaworthy. *See* Boudoin v. Lykes Bros. S. S. Co., Inc., 1955, 348 U.S. 336, 340, 75 S.Ct. 382, 99 L.Ed. 354; Clevenger v. Star Fish & Oyster Co., 5 Cir., 1963, 325 F.2d 397, 400–02. We recognize the principle that an employer may be liable for injuries inflicted by its employee even though not strictly in the course of his employment, if it is closely connected. *See, e. g.,* Ira S. Bushey & Sons, Inc. v. United States, ante. *But cf.* Stewart v. Steamer Blue Trader, 1 Cir., 1970, 428 F.2d 361 (per curiam). Thus, even willful conduct, of the sort involved in the cases cited by shipowners, may bind an employer. *See* Hartford Accident & Indemn. Co. v. Cardillo, 1940, 72 App.D.C. 52, 112 F.2d 11, cert. denied, 310 U.S. 649, 60 S.Ct. 1100, 84 L.Ed. 1415. The difficulty here is caused by the fact that the jury may have found the longshoreman's negligent conduct quite unrelated to his work.

■ Moreover, even if the conduct of a seaman acting beyond the scope of his duties may constitute violation of his shipowner's warranty of seaworthiness, it does not follow that the conduct of a longshoreman acting beyond the scope of his duties must transgress his stevedore's guaranty. The stevedore's warranty of performance is merely to render workman-like service, which by translation means to furnish workmen who will do their job in a safe and workman-like manner. It is in this area that the stevedore's obligation to supply workers who will exercise care for their own safety applies. *See* Grayson v. Cordial Shipping Co., 7 Cir., 1974, 496 F.2d 710, 716; McLaughlin v. Trelleborgs Angfartygs A/B, ante; Arista Cia. DeVapores, S. A. v. Howard Terminal, ante. The special purpose of protecting seamen, as wards of the admiralty court, which forms the reason for the unlimited nature of the warranty of seaworthiness, does not carry over to the relationship between the shipowner and stevedore, which we hold, although broad, Santiago Martinez v. Compagnie Generale Transatlantique, 1 Cir., 517 F.2d 371, 1975 is confined to the contract. If, for example, a longshoreman hid in the hold and remained after hours to commit larceny, and assaulted a member of the crew who discovered him, we cannot think that the stevedore would be liable to the crewman for the injury, even though the shipowner might be. Nor, in such case, would we see any basis for requiring the stevedore to indemnify the shipowner. The present case, assuming that what the jury found to be the longshoreman's contributory negligence was unconnected with his employment, is far weaker than that. *Cf.* LaBolle v. Nitto Line, N.D. Cal., 1967, 268 F.Supp. 16.

Petition denied.