517 F.2d 371
 Ruben SANTIAGO MARTINEZ, Plaintiff-Appellee,
v.
COMPAGNIE GENERALE TRANSATLANTIQUE, Defendant and
Third-Party Plaintiff-Appellant,
v.
FRED IMBERT, INC., Third-Party Defendant-Appellee.
Ruben SANTIAGO MARTINEZ, Plaintiff-Appellant,
v.
COMPAGNIE GENERALE TRANSATLANTIQUE, Defendant and
Third-Party Plaintiff-Appellee,
v.
FRED IMBERT, INC., Third-Party Defendant-Appellee.
Ruben SANTIAGO MARTINEZ, Plaintiff-Appellee,
v.
COMPAGNIE GENERALE TRANSATLANTIQUE, Defendant and
Third-Party Plaintiff-Appellee,
v.
FRED IMBERT, INC., Third-Party Defendant-Appellant.
 Nos. 74-1353 to 74-1355.
 United States Court of Appeals,
First Circuit.
 Argued Feb. 4, 1975.
Decided May 29, 1975.
 
 William M. Kimball, New York City, with whom Jose L. Novas-Dueno, Hartzell, Ydrach, Mellado, Santiago, Perez & Novas, San Juan, P. R., and Burlingham, Underwood & Lord, New York City, were on briefs, for Compagnie Generale Transatlantique.
 Charles A. Cordero, San Juan, P. R., for Fred Imbert, Inc.
 Harvey B. Nachman, San Juan, P. R., with whom Nachman, Feldstein & Gelpi, San Juan, P. R., was on briefs for Ruben Santiago Martinez.
 Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.
 McENTEE, Circuit Judge.
 
 
 1
 The familiar longshoreman-shipowner-stevedore triangle has led to the three appeals presented in this case. Plaintiff Santiago Martinez, employed as a longshoreman by Fred Imbert, Inc., was working in the hold of the M/V FORT DESAIX when he was struck and pinned by a moving pallet on November 9, 1968. He sued defendant Compagnie Generale Transatlantique, the shipowner, who in turn filed a third party complaint seeking indemnity from plaintiff's employer, Imbert (the stevedore). By a general verdict the jury awarded the longshoreman $90,000 and found for the stevedore in the indemnity action. The shipowner appeals from both judgments. In addition, the longshoreman appeals from the district court's denial of his motion to award attorney's fees and prejudgment interest against shipowner for obstinacy, and the stevedore also appeals the denial of an award for attorney's fees and other defense costs it incurred. We conclude that the indemnity action must be retried, but reject the other appeals.
 
 
 2
 The shipowner's first argument is that there was not sufficient evidence to allow the jury to find for the longshoreman. We disagree. The unloading on the ship was being done by a married winch operation. This required the use of two winches pulling against each other in synchronization to raise a pallet of cargo from the hold where the longshoreman was working. If one winch failed or was not operated correctly, the cargo would plumb under the opposite winch. In the instant case the onshore winch stopped or did not start and thus allowed the full pallet of cargo to plumb under the offshore winch and pin the longshoreman. There was testimony that the same winch had stopped about two hours earlier, but no injury resulted. On both occasions a member of the ship's crew repaired the winch or replaced fuses and signaled the winchman to resume operations. The electric winches had separate control wheels, but one winchman operated both winches by sticks attached to the wheels for two and one-half hours and then was relieved by the other winchman.
 
 
 3
 On the unseaworthiness theory the shipowner essentially argues that the winch may have overloaded and blown a fuse because the winchman was confused as to which way to operate the winch or because the winchman accelerated the winch too rapidly. Even if a winchman was confused at trial as to which way to turn the winches in this married operation, that does not necessarily mean he was confused at the time of the accident years earlier. The important point is that both of these theories were presented to the jury under proper instructions, and the shipowner cannot reargue here that the ship was seaworthy because the evidence allowed an inference that the accident occurred because of a longshoreman's negligence with no more than instantaneous effect. See Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971). The evidence does not compel that inference, and therefore we need say nothing more about this argument. Nor are we impressed by the argument that the evidence showed the winch "stopped," not that it "broke or failed." By this distinction the shipowner attempts to avoid the effect of Greene v. Vantage S.S. Co., 466 F.2d 159, 163 (4th Cir. 1972): "Where an appliance or piece of equipment breaks or fails in the normal course of use, a plaintiff need not show why the failure occurred, but only that it did occur with the resulting injury." But the jury could have found on the evidence that the winch did fail in the normal course of use. The last attack made on the unseaworthiness theory is that the ship would have been unseaworthy had a fuse not blown when it was overloaded, so the ship could not have been unseaworthy because a fuse blew. The defect in this argument is that the married winch operation may have required that a cutoff device stop both winches automatically if one failed. We are not prepared to say that a jury could not have so applied the seaworthiness requirement.
 
 
 4
 Plaintiff's separate count for negligence created complications that we have had occasion to speak about before. As the instant charge illustrates, it is difficult enough to charge a lay jury in a seaman's case without adding what are not merely redundant questions, but the same questions over again in a more complicated form.
 
 
 5
 The court charged the jury with respect to the negligence count that plaintiff claimed the shipowner to have been negligent in four particulars:
 
 
 6
 "(a) In failing to furnish the plaintiff with a reasonably safe place to work. (b) In failing to supply the plaintiff with a reasonably safe vessel and appliances. (c) In failing to provide a proper winch to remove the cargo. (d) In failing to properly supervise the discharging operations."
 
 
 7
 It must be apparent that the first three claims were fully and exactly covered by the seaworthiness count and the court's proper charge that proof as to any of them would impose unseaworthiness liability even though the shipowner was entirely without fault. No purpose is served by asking the jury to resolve the same issues again with the added requirement that there be affirmative proof of negligence. To paraphrase the Court in Jarecki v. G. D. Searle & Co., 367 U.S. 303, 307, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961), having established a hole in the fence for one cat, there is no need to construct another hole for a second. We dealt with this question in Peymann v. Perini Corp., 507 F.2d 1318, 1323 (1st Cir. 1974), cert. denied, --- U.S. ---, 95 S.Ct. 1572, 43 L.Ed.2d 780 (1975), where we pointed out that the negligence count was superfluous when it merely re-alleged the same defects that made the ship unseaworthy.
 
 
 8
 Here, it can have made no difference whether the court's charge with respect to negligence under items (a), (b) and (c) was sufficiently favorable to the shipowner, or whether the evidence warranted a finding of lack of due care on the shipowner's part. The charge was certainly no less favorable to the shipowner than was that on unseaworthiness, and both theories were submitted to the jury which returned, without objection, a general verdict. On this record we perceive no way in which the shipowner may have been prejudiced.
 
 
 9
 The only additional matter alleged in the negligence count was item (d), failing to properly supervise the discharging operations. With respect to this, the court charged,
 
 
 10
 "The shipowner has no duty to oversee, supervise or direct the methods by which or manner in which the stevedoring corporation and its employees perform the stevedoring services, but the shipowner must correct any dangerous condition if it is known or discovered by him."
 
 
 11
 After the charge, at the sidebar, the court stated that it had given this request of the shipowner inadvertently, as it was too favorable. On the shipowner's appeal we need not consider whether it was too favorable for certainly it was favorable enough. Nor do we see any conflict between this instruction and item (d), which was not stated to the jury as a ruling of law, but simply as what plaintiff claimed.
 
 
 12
 The court also charged that the shipowner might be denied indemnity if the jury found that the shipowner "by the action of the mate or the crew member, acquiesced or consented to the continuance of the stevedore's conduct of which it now complains . . ." and the shipowner apparently objects that this contradicted the charge that it had no duty to supervise. We see no inconsistency. To allow denial of indemnity upon a finding that the shipowner approved of the stevedore's performance is not to impose liability upon a finding that the shipowner failed to disapprove of the stevedore's performance. Since the shipowner's single remaining objection to the charge in the longshoreman's action depends on quoting the charge out of context, we find no error there. Consequently, the judgment for the longshoreman is affirmed.
 
 
 13
 The longshoreman's appeal from the finding that the shipowner was not obstinate within the meaning of Puerto Rico Rules of Civil Procedure 44.4(d) and (e)* need not detain us long. By converse reasoning to that applied above, the shipowner had supportable claims either that it was not liable or that it was liable to only a small degree. The jury might have found that the winchman caused this accident by mishandling the winch, in which event Usner would have barred a finding of unseaworthiness. Or the jury might have found that the plaintiff longshoreman was contributorily negligent by loading another pallet rather than standing out of the way during the lifting phase as he was required to. Since the first failure of this winch did not hurt anyone and should have alerted the longshoremen in the hold not to unnecessarily expose themselves to danger, the jury could have assessed the proportionate contribution of such negligence at a high figure. The diagnosis of plaintiff's problem as "conversion reaction, chronic related" also produced substantial issues regarding the amount of damages. These considerations amply support the district court's denial of counsel fees and prejudgment interest.
 
 
 14
 We turn now to the indemnity issue. The shipowner objected to the following charge:
 
 
 15
 "If a contributing cause of plaintiff's injury was his own negligence, that is a factor to be considered by you in determining whether the stevedore has breached its warranty to the shipowner and (if) after considering all the evidence in the case you find that the stevedore has breached its warranty, then the shipowner would be entitled to recover indemnity from the stevedore."
 
 
 16
 Its claim is that the jury should have been charged that "If a contributing cause of plaintiff's injury was his own negligence, then the shipowner would be entitled to recover indemnity." Another portion of the charge adequately covered the discrete issue of whether shipowner was precluded from recovering indemnity by conduct on its part, see Weyerhaeuser S.S. Co. v. Nacirema Operating Co., Inc., 355 U.S. 563, 567, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958), so that issue is not involved here. This dispute is whether a longshoreman's contributory negligence automatically establishes breach by the longshoreman's employer of its warranty of workmanlike performance. In the Fifth Circuit it appears that contributory negligence by a longshoreman does not necessarily amount to breach of warranty by the stevedore. Instead, the longshoreman's contributory negligence is regarded as one consideration in determining whether the stevedore breached its warranty. See Julian v. Mitsui O.S.K. Lines, Ltd., 479 F.2d 432, 433 (5th Cir.), cert. denied sub nom. Mitsui O.S.K. Lines, Ltd. v. Strachan Shipping Co., 414 U.S. 1093, 94 S.Ct. 725, 38 L.Ed.2d 551 (1973); D/S Ove Skou v. Hebert, 365 F.2d 341, 350 (5th Cir. 1966), cert. denied sub nom. Southern Stevedoring & Contracting Co. v. D/S Ove Skou, 400 U.S. 902, 91 S.Ct. 139, 27 L.Ed.2d 139 (1970); Lusich v. Bloomfield S.S. Co., 355 F.2d 770, 778 (5th Cir. 1966). It appears that the Third Circuit accepts this approach also. See Shaw v. Lauritzen, 428 F.2d 247 (3d Cir. 1970). In the Second, Fourth, and Ninth Circuits the rule is that contributory negligence by the longshoreman within the scope of his employment is imputed to the stevedore. McLaughlin v. Trelleborgs Angfartygs A/B, 408 F.2d 1334, 1336-37 (2d Cir.), cert. denied sub nom. Golten Marine Co. v. Trelleborgs Angfartygs A/B, 395 U.S. 946, 89 S.Ct. 2020, 23 L.Ed.2d 464 (1969); Nicroli v. Den Norske Afrika-Og Australielinie, 332 F.2d 651, 656 (2d Cir. 1964); Damanti v. A/S Inger, 314 F.2d 395, 399 (2d Cir.), cert. denied sub nom. Daniels & Kennedy, Inc. v. A/S Inger, 375 U.S. 834, 84 S.Ct. 46, 11 L.Ed.2d 64 (1963); United States Lines, Inc. v. Jarka Corp. of Baltimore, 444 F.2d 26, 28 (4th Cir. 1971); Arista Cia. DeVapores, S/A v. Howard Terminal, 372 F.2d 152, 154 (9th Cir. 1967). This also may be the rule in the Sixth Circuit. See Turner v. Global Seas, Inc., 505 F.2d 751, 756-57 (6th Cir. 1974). We have recently held that "a stevedore's warranty of workmanlike performance encompasses a promise to provide longshoremen free of negligence. . . ." Carrillo v. Sameit Westbulk, 514 F.2d 1214 (1st Cir. 1975). In light of that well-settled rule it is difficult to argue that a stevedore has not breached its warranty where it turns out that one of its employees was negligent within the scope of his employment. We believe the correct rule is that the plaintiff longshoreman's negligence must be imputed to his employer as a basis for indemnity. Of course, this does not mean that a finding of contributory negligence automatically establishes the shipowner's right to indemnity. The fact finder may still find that there was conduct by the shipowner sufficient to preclude indemnity. See generally Hurdich v. Eastmount Shipping Co., 503 F.2d 397 (2d Cir. 1974).
 
 
 17
 On the evidence and the charge in this case, coupled with the general verdict, it is entirely possible that the jury found the longshoreman contributorily negligent. Accordingly we are compelled to reverse the judgment for the stevedore and remand for a new trial. It is no answer that the jury may have found that the shipowner's conduct in providing a defective winch was conduct precluding indemnity. If we knew that was their finding, we could avoid a new trial, but we cannot speculate that the error in the charge did not prejudice the shipowner. This posture evidences once again the usefulness of the procedure authorized in Fed.R.Civ.P. 49(b). If this case had been submitted to the jury for a general verdict accompanied by answers to appropriately phrased interrogatories, the needless waste of a new trial could have been avoided. The debate between the parties over who should bear responsibility for this shortcoming is somewhat shortsighted. Some measure of the blame for not requesting such a submission must be laid at the shipowner's feet, but an equal measure must be assigned to the stevedore. And of course the court itself would have been well-advised to utilize this procedure.
 
 
 18
 The remaining issue is the stevedore's appeal. It argues that the shipowner was obstinate in not conceding unseaworthiness and in not being sufficiently receptive to settlement negotiations. Reliance is placed on Rivera v. Rederi A/B Nordstjernan, 456 F.2d 970 (1st Cir. 1972), where the imposition of attorney's fees for obstinacy was upheld against the shipowner even though that party prevailed in the third party action. But this case is not analogous to Rivera. It upheld imposition of attorney's fees for the benefit of the plaintiff longshoreman, not for the stevedore. Rivera also implicitly recognized that obstinacy in defending against a plaintiff does not necessarily establish obstinacy in claiming indemnity from a third-party defendant. See id. at 975 n. 11. Even if we had decided the appeal of the indemnity action differently, the facts of this case would not support a finding of obstinacy against the shipowner and in favor of the stevedore. We need not reach the stevedore's remaining point, that it is entitled to counsel fees and other defense costs from the shipowner for its breach of its warranty to the stevedore, since that question has been mooted by our reversal in the indemnity action.
 
 
 19
 The judgment for the plaintiff longshoreman is affirmed; the denial of his motion for an obstinacy award is also affirmed; the judgment for the stevedore is reversed and that case is remanded for a new trial; and the appeal of the stevedore is dismissed.
 
 
 
 *
 These rules provide as follows:
 "(d) Attorney's fees. Where a party has been obstinate, the court shall in its judgment impose on such person the payment of a sum for attorney's fees."
 "(e) (Legal interest.) In all cases of money collection where the party has been obstinate the court shall impose on such person the payment of interest according to law, from the time in which there appeared cause of action and in case of damages, such payment of interest shall be imposed from the time the filing of the claim was made and computed on the amount of the judgment . . .."